# Philadelphia & Gulf Steamship Company *v.* Clark, Appellant.

*Courts—Municipal courts—Method of trial without a jury—Practice, C. P.*

1. In cases tried without a jury by the municipal court of Philadelphia county, the practice in respect to the trial is not regulated by the Act of April 22, 1874, P. L. 109, requiring distinct findings of fact and conclusions of law.

2. The benefits of the Act of April 22, 1905, P. L. 286, may be obtained by presenting a point for binding instructions, and in case of its refusal moving for judgment in accordance with the provisions of that act; the substantial benefits flowing from detailed findings may be obtained by presenting pertinent written points and excepting to the answers; if no points for findings of fact or conclusions of law are presented the court may make a general finding or decision without stating separately and distinctly the facts and conclusions of law which led to it.

3. Section 27 of art. 7 of the constitution of Pennsylvania relating to trial of civil cases by the court without a jury, is not so far self-executing as to be independent of the legislation regulating the practice under it.

*Receivers—Foreign corporation—Suit for stock subscription—Proof of foreign law—Evidence.*

4. In an action brought pursuant to a decree of the court having jurisdiction of the receivership of a foreign corporation, not only authorizing but directing the receiver to, collect the balances unpaid on the subscriptions to the capital stock of the company, it is not necessary in a suit against a subscriber, for the receiver to prove the laws of the state in which the company was incorporated and compliance therewith; nor if it appears that the defendant had paid part of his subscription, is it necessary to prove that the whole of the amount claimed was needed to pay debts of the corporation.

5. Where a person subscribes to the stock of an existing corporation, and pays an installment on his subscription, and is subsequently sued for the balance, he is liable for the whole amount unpaid, and not merely for the difference between the amount he agreed to pay for the stock and its value when suit was brought.

6. In an action by the receiver of a foreign corporation to recover the balance of an unpaid stock subscription, where the evidence showed that the corporation was a steamship company whose whole business was the interstate transportation of merchandise, the defendant cannot set up as a defense the fact that the corporation had not complied with the Pennsylvania Acts of April 22, 1874, P. L. 108, and

June 8, 1911, P. L. 710, relating to foreign corporations. In such a case the solicitation and the acceptance of subscriptions for stock within Pennsylvania after the company was organized and doing business, is not in itself a doing of domestic business which subjected the company to the state's statutes.

*Evidence—Witness—Cross-examination.*

7. The cross-examination of a witness should be confined to matters in regard to which he has been interrogated in chief, or to such questions as may tend to show bias, interest, or relation to the party calling him, or to test his knowledge, integrity, or accuracy of statement. A party cannot be permitted to lead out new matter, constituting his own case, under guise of a cross-examination.

*Corporations—Suit on stock subscriptions—Misrepresentations—Evidence.*

8. In an action by the receiver of a corporation to recover the balance on an unpaid stock subscription where the defendant alleges that he was induced to subscribe by misrepresentations made by the agent of the company as to dividends earned, the defendant cannot be permitted to show the financial condition of the company two years after the date of his subscription.

9. In such a case where the books of the company are not produced the receiver will not be permitted to state his deductions from the books which he had no access to nor knowledge of until two years after the date of the plaintiff's subscription to the stock.

Argued Oct. 21, 1914. Appeal, No. 97, Oct. T., 1914, by defendant, from judgment of Municipal Ct., Phila. Co., Jan. T., 1914, No. 96, on verdict for plaintiff in case of Philadelphia & Gulf Steamship Company in the hands of S. P. Wetherill, Jr., Receiver, v. Charles E. Clark. Before RICE, P. L., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit to recover an unpaid balance of stock subscription. Before BONNIWELL, J.

From the record it appeared that on November 5, 1909, the defendant agreed in writing to subscribe for fifteen shares of the capital stock of the Philadelphia & Gulf Steamship Company for which he agreed to pay $50.00 per share. At the time of the subscription he paid $150, and suit was brought for $600 unpaid.

S. P. Wetherill, Jr., was appointed receiver of the steamship company by a decree of the United States district court for the eastern district of Pennsylvania, dated September 27, 1912. On October 16, 1913, the receiver was authorized and directed to collect the balance remaining unpaid on the subscription to the stock of the company.

The defendant alleged that he was induced to subscribe to the stock by misrepresentations of the company's agent as to the earnings of the company.

When William S. Dowdy, secretary and treasurer of the steamship company, and a witness for plaintiff was on the stand, he was asked this question:

"Q. Do you know, as treasurer of the company, whether any money was ever paid to the state of Pennsylvania in the nature of a tax or fee for authorizing the company to do any business in Pennsylvania?"

Objected to as not proper cross-examination. Objection sustained. Exception for defendant. [3]

"Q. At the time of the making of the contract between the plaintiff company and the defendant, on November 5, 1909, was the company being operated at a profit or at a loss?"

Objected to. Objections sustained. Exception for defendant. [4]

When the receiver was on the stand he was asked this question:

"Q. Were you the chairman of the stockholders' committee of the Philadelphia & Gulf Steamship Company, plaintiff in this case, which obtained from Lawrence E. Brown & Company, certified public accountants in this city, a statement of the assets and liabilities and conduct of the business of the company as to the profits and loss during its life? During the life of the Philadelphia & Gulf Steamship company?"

Objected to.

Mr. Griffith: I propose to show by this circular, which was distributed by the witness, that Lawrence E. Brown

& Company made a report showing during the entire period from 1908 until 1911, this company instead of making money, lost $155,000. I want to show by this witness that he had prepared by certified public accountants a statement of the assets and liabilities, of its methods of operation, a statement which was sent out by this witness, in which it is stated that during a period of time covering the subscription for this stock, that instead of making 40 per cent, which Mr. Clark testified they said they were then making, that the company lost $155,000. This is for the purpose of proving that at the time that statement was made to my client, the company, instead of making forty per cent on its stock, was actually losing money. Objection sustained. Exception for defendant. [5]

"Q. Did you have an examination of the books of the Philadelphia & Gulf Steamship Company made by Lawrence E. Brown &——"

Objected to. Objection sustained. · Exception for defendant. [6]

"Q. Did you distribute the report addressed to you, Mr. Samuel P. Wetherill, Jr., chairman of the stockholders' committee, dated February 15, 1912, from Lawrence E. Brown & Company, showing a loss by the Philadelphia & Gulf Steamship Company, of $155,000 between its incorporation and December 31, 1911?"

Objected to. Objection sustained. Exception for defendant. [7]

Mr. Conlen: I also object to the form of question, as the form of the question was calculated to make the court think that this account indicated that there was a loss at the period named, whereas the account simply showed the balance representing the company's loss from these operations to December 31, 1911.

"Q. Did you verify the report made by Lawrence E. Brown & Company, referred to in the previous question?"

Objected to. Objection sustained. Exception for defendant. [8]

"Q. Can you tell me whether from an examination of the books of the company, as receiver or as a member of the board of directors, the company was actually earning dividends at the time of the subscription to this stock?"

Objected to.  Objection sustained.  Exception for defendant. [9]

"Q. Can you tell me whether the company ever was making any money?"

Objected to.  Objection sustained.  Exception for defendant. [10]

"Q. At the time you became a director of the corporation (February, 1911) was the company operating its business at a profit?"

Objected as immaterial what they were doing in 1911. Objection sustained.  Exception for defendant. [11]

Verdict and judgment for plaintiff for $745.40.  Defendant appealed.

*Errors assigned* were (1, 2) that the decision of the court contained no separate findings of fact and conclusions of law as required by the Act of April 22, 1874, P. L. 109; (3–11) rulings on evidence, quoting the bill of exceptions; (15) in dismissing rule for judgment for defendant n. o. v.

*Nathan M. Griffith*, with him *Frederick M. Leonard*, for appellant.—The form of the decision was improper: Carpenter v. Yeadon Borough, 208 Pa. 396.

The company had not complied with the Pennsylvania statutes: Pavilion Co. v. Hamilton, 15 Pa. Superior Ct. 389; West-Jersey Ice Mfg. Co. v. Armour, 12 Pa. Superior Ct. 443; Allen v. Pullman Co., 191 U. S. 171; Attorney General v. Electric Storage Co., 188 Mass. 239; American Smelting & Refining Co. v. People, 34 Colo. 240.

The entire balance cannot be recovered without any proof of necessity of contribution to discharge ascertained and proven liabilities: Wisener v. Myers, 3 Pa.

Dist. Rep. 687; Donaldson v. Rabenhold, 23 Pa. Dist. Rep. 795.

This was a subscription to stock one year after incorporation and is not within the decisions governing original subscriptions: Bole v. Fulton, 233 Pa. 609.

The plaintiff is a corporation of the state of Delaware and the laws of that state are a part of the contract of subscription, and proof of those laws and of compliance therewith is on the plaintiff: Cushing v. Perot, 175 Pa. 66; Ball v. Anderson, 196 Pa. 86.

A fraudulent representation of forty per cent present earnings, inducing the subscription, vitiated the contract: Rumsey v. Shaw, 212 Pa. 576; Litchfield Bank v. Peck, 29 Conn. 384.

*W. J. Conlen,* of *Conlen, Brinton & Acker,* with him *J. Thurston Manning, Jr.,* for appellee.—The case was tried in proper form: Lehman v. Lehman, 29 Pa. Superior Ct. 60; Foehr v. N. Y. Short Line R. R. Co., 40 Pa. Superior Ct. 7.

The action is not barred by nonregistration of company: Galena M. & S. Co. v. Frazier, 20 Pa. Superior Ct. 394.

The only business done by the company in this state was interstate commerce, and on this point this case is clearly and completely ruled by the decisions of the United States supreme court: International Text Book Company v. Pigg, 217 U. S. 91; Barrett v. New York, 232 U. S. 15; Sault Ste. Marie v. International Transit Co., 234 U. S. 333.

Appellant cannot set up nonregistration: Kilgore v. Smith, 122 Pa. 48.

The present case is clearly distinguishable from and is in no way ruled by Bole v. Fulton, and the decision in that case can have no bearing upon this: Braddock Electric Ry. Co. v. Bily, 11 Pa. Superior Ct. 144.

Opinion by Rice, P. J., April 19, 1915:

1. Section 27, art. 5, of the constitution relating to

trial of civil cases by the court without a jury, is not so far self-executing as to be independent of the legislation regulating the practice under it: Com. ex rel. v. Mitchell, 80 Pa. 57. The first question for decision is whether, as to cases tried in the municipal court, the practice is regulated by the Act of April 22, 1874, P. L. 109, or by the act of July 12, 1913, establishing that court, and the rules adopted pursuant to its provisions. The act of 1874 is broad enough in terms to include civil cases commenced in courts afterwards established, but of course it did not preclude future legislation on the subject. Recent decisions have determined beyond dispute, that the legislature can create a new court of a different class or grade from those already established, and prescribe its powers and procedure. We quote from the opinion of the Supreme Court, delivered by Mr. Justice ELKIN in Philadelphia & Reading R. R. Co. v. Walton: "There is nothing in the constitution which requires the municipal court to exercise the same jurisdiction, or to adopt the same methods of procedure as those in force in the common pleas. These courts are of a different class or grade, and the constitution only requires uniformity as to jurisdiction, powers and procedure in each class." It is equally clear that there is nothing in the constitutional provision relating to trial by the court without a jury which made it mandatory on the legislature to prescribe the particular mode of procedure adopted in the act of 1874. Whether that or some other method, complete in all details, should be prescribed by statute for the regulation of such trial in the municipal court, or the subject should be committed to the court for regulation by general rule was a legislative question. In addition to the "full power to make rules regulating the practice and procedure therein, which is conferred by sec. 16 of the municipal court act, special provision is made regarding this class of cases. Section 12 provides that every statement of claim, before it is received by the prothonotary, shall have

indorsed thereon, "Jury trial demanded" or "It is agreed that this case be tried by a judge without a jury," and that every answer, where plaintiff has not demanded a jury trial, shall have a similar indorsement. The section then declares that if both parties, as aforesaid, have filed agreements that the case may be tried by a judge without a jury, "it shall be so tried, under such rules of procedure as the court shall prescribe." What is meant by "trial" in a legislative enactment depends, largely, on the connection in which the word is used. But in its general sense it means the investigation and decision of a matter in issue between parties before a competent tribunal: Jenks v. State, 39 Ind. 1–9. We entertain no doubt that that was the sense in which the legislature used the word in this enactment, therefore, the trial includes the decision. Thus viewing the statutory provisions our conclusion is that Rule 15 of the municipal court, so far as it relates to the form of the decision, does not exceed the authority conferred by the legislature.

In construing the rule the clause relating to the form of the decision should be read with the other clauses, and particular regard must be had to the provision that the trial of cases at law without a jury shall so far as practicable be conducted as cases are now tried before juries. Thus viewing the rule we reach the conclusions: first, that the benefits of the act of 1905 may be obtained by presenting a point in writing equivalent in substance to a point for binding instructions, and in case of its refusal moving for judgment in accordance with the provisions of that act; second, that the substantial benefits flowing from detailed findings may be obtained by presenting pertinent written points and excepting to the answers; third, if no points for findings of fact or conclusions of law are presented the court may make a general finding or decision without stating separately and distinctly the facts and conclusions of law which led to it. It follows that the objection that

the decision is not in accordance with the requirements of the act of 1874, is not sustained.

2. The action was brought pursuant to a decree of the court having jurisdiction of the receivership, not only authorizing but directing the receiver to collect the balances unpaid on the subscriptions to the capital stock of the company, and to institute suits for that purpose.  It was brought to enforce payment of an overdue debt arising out of an express contract, made and to be performed in Pennsylvania, not to enforce a liability imposed by the statutes of Delaware.  Therefore, it was not incumbent on the plaintiff to prove the laws of that state and compliance therewith.

Nor can we agree with appellant's counsel that in order to recover the entire balance it was incumbent on the plaintiff to prove that all was needed to pay debts of the corporation.  The defendant's promise was absolute and was neither expressly nor impliedly a promise to pay upon call or as needed.  The case is plainly distinguishable from those based on a contractual or statutory obligation of the latter kind.  The debt was due long before the receiver was appointed, and by the decree he was expressly directed to collect it. Whether proof by the defendant that it was not needed to discharge existing liabilities of the corporation would be admissible, notwithstanding the decree, and would defeat the action, are questions which do not arise on the pleadings and evidence and will not be discussed. It is sufficient for present purposes to say that proof that it was needed was not essential to the plaintiff's prima facie case.

There is a well-recognized distinction between original subscriptions for stock in a corporation to be formed and subscriptions for shares in an existing corporation. With regard to the latter class (to which the subscription in question belongs), it has been said "the contract is not between the subscribers, except as it is shown that the subscriptions were mutual considerations for each

other, but between each individual subscriber and the corporation as it exists and is simply a contract of purchase and sale:" Bole v. Fulton, 233 Pa. 609. That case is relied on by the defendant as authority for his contention that the plaintiff could only recover the difference between the amount the defendant agreed to pay for the stock and its value when suit was brought. That might be true, if, as in the case cited, payment by the defendant and tender by the company were intended to be contemporaneous acts, and before performance of either the defendant repudiated the contract. But here the defendant never repudiated or attempted to rescind; on the contrary, he performed by paying several installments as they became due, and for aught that is alleged in his answer or the proofs he obtained what he contracted for—stockholdership in the corporation. True, to constitute a subscriber for new stock a stockholder, something more than a mere subscription is requisite; payment is necessary. The subscription is but the contract. "Payment when called by the company, and when made by the subscriber constitutes him a shareholder, whether a certificate has been issued or not:" Baltimore City Pass. Ry. Co. v. Hambleton, 77 Md. 341, cited by Mr. Justice STEW-ART in Bole v. Fulton. See also Oak Bank Oil Co. v. Crum, L. R., 8 App. Cases, 65. It seems quite clear to us that by payment and acceptance of the installments, the contract was so far executed as to preclude the application of the principle involved in the decision in Bole v. Fulton. The measure of recovery was not the damages accruing from the breach of a purely executory contract to subscribe but the amount due and unpaid.

3. At the time the subscription for stock was made the plaintiff corporation had not complied with the conditions, which the Act of April 22, 1874, P. L. 108, makes a prerequisite to the right of a foreign corporation to do business in this commonwealth; nor were the provisions of the Act of June 8, 1911, P. L. 710, ·complied with

before the action was brought. One of the questions for decision is whether the action could be maintained, notwithstanding this noncompliance with the statutory conditions. It is contended that the defendant being a stockholder in the corporation, cannot set this up as a defense to the present action; also that the act of 1911, does not apply to an action brought by the receiver. Passing these contentions, the determination of the question stated depends upon the business the company was organized to conduct and actually conducted. Its general business was the transportation of merchandise between Philadelphia, Charleston and New Orleans. It maintained offices in Philadelphia for the conduct of that general business, "at which the manager transacted the business of this said foreign corporation, at which a large force of clerks and other employees were constantly employed, and at which also contracts were made and concluded between the corporation plaintiff and other persons for every manner of business relating to the shipment and arrival of passengers and freight, and the payment and receipt of charges therefor; by the leasing of a wharf for a term of years from the city of Philadelphia at which the transportation business of the company was managed and operated, its steamships docked, loaded and unloaded; at which freight was delivered and received and the charges therefor paid and collected and in general the said corporation plaintiff transacted all of the business for which it had been originally created." The foregoing statement of the business done goes more into detail than the testimony adduced on the trial, but for present purposes it may be accepted as accurate. Clearly the business, including the necessary incidents referred to, was interstate commerce, and under the facts so far stated, was exclusively such. Therefore, it was within the protection of the commerce clause of the federal constitution and not subject to the restrictive conditions of the state statutes to which we have referred: International Text

Book Co. v. Pigg, 217 U. S. 91; Buck Stove, etc., Co. v. Vickers, 226 U. S. 205; Minnèsota Rate Cases, 230 U. S. 352, at page 401; Barrett Express Co. v. New York, 232 U. S. 14; Sault Ste. Marie v. International Transit Co., 234 U. S. 333. In the last cited case, which is peculiarly pertinent because of its facts, Justice HUGHES said: "The fundamental principle involved has been applied by this court in recent decisions in a great variety of circumstances, and it must be taken as firmly established that one · otherwise enjoying full capacity for the purposes cannot be compelled to take out a local license for the mere privilege of carrying on interstate or foreign commerce."

It is argued that the solicitation and acceptance of subscriptions for stock within the state, after the company was organized and began business, was in itself a doing of domestic business, which subjected the company to the state statutes. In support of this proposition, counsel cite: Allen v. Pullman Palace Car Co., 191 U. S. 171, and Attorney General v. Electric Storage Battery Co., 188 Mass. 239. In the latter case it was held that while the state statute was inapplicable to any business or place which belongs entirely to interstate commerce, it was applicable to a corporation engaged in interstate commerce, which had at the same time a place of business "for other purposes." Conceding the general principle involved in that ruling it does not apply here. The other transaction or transactions which subject a corporation engaged in interstate commerce to the state statute must amount to the doing of business within the meaning of that statute, and they must not be merely incidental to the carrying on of the branch of interstate commerce for which it was organized and in which it was engaged. The acceptance of a subscription for new stock has been spoken of as a purchase and sale, and for many purposes it must be so regarded. But it cannot be said that the company was engaged in the business of selling stocks, any more appropriately

than it could be said that it was engaged in the business of negotiating mortgages because it gave a mortgage on one of its steamships. These acts, so far as the evidence discloses, were not independently the doing of business within the meaning of the act of 1874, but were merely incidental to the carrying on of its general business. This point was ruled in Pavilion Co. v. Hamilton, 15 Pa. Superior Ct. 389, and and in Galena M. & S. Co. v. Frazier, 20 Pa. Superior Ct. 394. In the latter case Judge ORLADY said: "From the record as presented to us, it appears as in Pavilion Company v. Hamilton, supra, that the subscription to stock in the plaintiff company, though made in Philadelphia was made in order only that the business of the company might be actually prosecuted in another state." So here the subscriptions were made and accepted in order only that the business of the company, which was strictly and exclusively interstate commerce, might be prosecuted.

It follows from the foregoing that the request for a finding in the defendant's favor was properly overruled. The remaining questions arise upon exceptions to the rulings made during the trial.

4. It is well settled in this state that the cross-examination of a witness should be confined to matters in regard to which he has been interrogated in chief, or to such questions as may tend to show bias, interest or relation to the party calling him, or to test his knowledge, integrity or accuracy of statement: Glenn v. Philadelphia Traction Company, 206 Pa. 135. To permit a party to lead out new matter, constituting his own case, under the guise of a cross-examination is disorderly and often unfair to the opposite party: Hughes v. Westmoreland Coal Co., 104 Pa. 207. This principle which has been reiterated in numberless cases, justified the rulings which were made upon the cross-examination of W. S. Dowdy.

The defendant alleged that his subscription was ob-

tained from him by misrepresentation of material facts and therefore was void.  In support of this allegation he testified that the agent who solicited it said that "40 per cent dividends would be paid and they were earning at that rate now."   The time to which this alleged representation related was the date of the subscription which was November 5, 1909.  Clearly, a report by public accountants to a committee of stockholders based on an investigation by them of the assets, liabilities and conduct of the business of the company, that during the period from 1908 to December 31, 1911, the company lost $155,000, would not, without more, show or tend to show what the company was earning in November, 1909.   For as is well said by counsel for plaintiff, the whole loss might have occurred within the last month or even week covered by the statement.   The fact of such loss being irrelevant, standing alone, the questions asked S. P. Wetherill, Jr., the receiver, relative to his knowledge of, connection with or responsibility for that report were equally irrelevant.  ·

Still more plainly so were the questions, whether when he became a director in February, 1911, the company was operating at a profit, what was the financial standing of the company at that time and whether he was chairman of a committee to devise and submit a plan for putting the company on a paying basis.

The ninth assignment of error should be particularly noticed.  As the witness did not become connected with the company until February, 1911, and in November, 1909, did not even know of its existence, it is apparent he had no personal knowledge, derived from participation in the affairs of the company, as to its earnings at that time.   The fact that he afterwards examined the books of the company and thereby obtained second-hand information as to its earnings in November, 1909, was not in itself a material fact as the case stood when he was asked the question quoted in this assignment. We assume that what the books showed as to that

matter was relevant. If they had been produced, and through his being receiver or having been a director he had become familiar with them, so as to be qualified to explain them to the court, perhaps he might have been asked to do so, even to the extent of stating results. But the books themselves and not his deductions from them were the best evidence. As they were not produced, or their nonproduction accounted for, the court committed no error in sustaining the objection to the question referred to in this assignment.

All the assignments of error are overruled and judgment is affirmed.