## Cohen et al. *v.* Keystone Mutual Casualty Co., Appellant.

Argued October 7, 1942.

Before KELLER, P. J., CUNNING-

HAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*David A. Saltzburg,* with him *Morris W. Kolander,* for appellant.

*J. Webster Jones,* for appellees.

OPINION BY RHODES, J., January 28, 1943:

This case involves a public liability policy issued by defendant to plaintiffs. An action in assumpsit was brought on the policy by plaintiffs to recover from defendant an amount which plaintiffs were obliged to assume for damage to property of another. The case was tried in the municipal court before a judge without a jury, who found for the plaintiffs. Subsequently the court stated the facts and conclusions of law which led to such finding. See *Philadelphia & Gulf Steamship Co. v. Clark,* 59 Pa. Superior Ct. 415, 422; *Deacon v. Hendricks,* 66 Pa. Superior Ct. 36; *Jann v. Linton's Lunch,* 150 Pa. Superior Ct. 653, 29 A. 2d 219. Defendant's motion for judgment n.o.v. having been dismissed and judgment entered on the finding, defendant has appealed, and assigns as error the refusal of its motion.

Defendant denied liability on the ground that the accident was not covered under the policy of insurance because the damaged property was in the custody and care of plaintiffs when the accident occurred. This was the issue presented by the pleadings, and the theory upon which the case was tried.

Plaintiffs entered into a written contract with Rothschild Construction Company, a general contractor,

whereby plaintiffs were engaged as subcontractor to perform certain demolition work on a building located at 1208 Chestnut Street, Philadelphia. The building extended from Chestnut Street to Sansom Street. It was 25 feet wide, and for a depth of 50 feet from the front part of the building on Chestnut Street it was 8 stories high. The remaining 185 feet of the building extending from the eight-story section to Sansom Street was one story. Plaintiffs under their contract with the general contractor were to demolish the 5 upper stories of the front part of the building. While thus engaged in moving debris across a portion of the roof of the one-story section, the roof collapsed and damaged the ceiling, walls, plumbing, wiring and other parts of the first floor. The presence of plaintiffs and their workmen on the roof was permissive to the extent that it was by consent of the general contractor.

The policy contained a property damage endorsement which reads in part as follows:

### "Insuring Agreement

"To indemnify the Assured against loss by reason of the liability imposed by law upon the Assured for damages on account of damage to or destruction of property (including loss of use thereof) as the result of an accident occurring during the effective period of this endorsement, caused solely and directly by reason of and during the progress of the business operations of the Assured described in and covered by the Schedule of this endorsement, except as to any operations or exposure in such premises which are shown to be excluded in said policy or, which are expressly shown to be excluded elsewhere in this endorsement, and subject further to all exclusions, conditions and limitations hereinafter contained.

### "Standard Exclusions

"This endorsement shall not cover damage or destruction:

"(a) to any property owned, leased, occupied or used by, or in the care, custody or control of the Assured or any of the Assured's employees ......"

In the property damage schedule plaintiffs were named as assured, and their business operations described as the "Wrecking or demolition of Buildings or Structures— not marine— all operations, including salesmen or clerical office employees, at site of wrecking." To the policy a special endorsement was attached which provided that "it is hereby understood and agreed that this policy is hereby extended to cover the following location: 1208 Chestnut St., Phila., Pa."

After making the finding for plaintiffs, the court below stated "separately and distinctly the facts and conclusions of law which led to it" although it does not appear that any points for findings of fact or conclusions of law were presented. We think the competent testimony was sufficient to sustain the finding in plaintiffs' favor which is as much a verdict as though found by a jury on the same issue. *Jann v. Linton's Lunch*, supra. As the basis of this finding it was set forth in the opinion of the court below, inter alia, that plaintiffs' contract was for the demolition of five stories of the front part of the building at 1208 Chestnut Street; that plaintiffs had no work to do on any floor below the third; that the general contractor who had contracted with the owner to make the alterations had the care and control of the premises embraced by the first, second, and third floors; that the plaintiffs did not have custody and care of the property damaged; that the property damaged was in the custody and care of the general contractor and the owner; and that the property was damaged as the result of the negligence of the plaintiffs. The evidence clearly supports the facts recited in the court's opinion. Even if there was evidence to the contrary, as defendant contends, it was not incumbent upon the trial judge

to accept such evidence rather than that upon which he made his finding.

In addition to the testimony of the several witnesses called by plaintiffs, the contract between plaintiffs and the general contractor was in evidence. This contract provided, inter alia: "Demolition work [by plaintiffs] shall be so conducted that it will not interfere with contractor's work in basement, first, second and third floor and new roof at any time. Method of procedure shall be as directed by the contractor." This would also indicate that plaintiffs were excluded from the first floor which was damaged, and that they did not have the care, custody, or control thereof.

Defendant in its brief concedes that, if the rear section of the building at 1208 Chestnut Street had constituted a different building, it might be contended that the property damaged belonged to a third party in which case recovery could be had under the terms of the policy. As to the first story section of the building, we think plaintiffs were in no different position than if it were a separate building, owned, occupied, and controlled by some one, entirely apart from the five stories fronting on Chestnut Street which plaintiffs had contracted to demolish.

In *A. T. Morris & Co., Inc., v. Lumber Mutual Casualty Ins. Co.*, 163 Misc. 715, 298 N. Y. S. 227, under a similar liability policy issued to a subcontractor, which covered damage to property "other than the property owned, leased, occupied by or used by, or in the care, custody or control of the assured or any of his employees," it was held that the property of a theater was not in the care, custody, or control of the insured where damage to the ceiling of the theater resulted from acts of its employees while the subcontractor was performing work in the theater under its contract. The court said (298 N.Y.S. 227, at page 231) : "The plaintiff and its employees were only in the theater because they had

a contract to work there. They had no care and custody of the theater property as such, nor did they have any control over it in the sense that a person who has personal property in his possession, such as an automobile, may be said to have control of it. Possession or control of real property is indicated by an occupation exclusive of the control of any one else. The plaintiff and its employees were simply in this property temporarily for the purpose of doing the work. The control of the property still remained in the owners or lessees thereof. Moving picture performances were being daily given in the theater under the management of the owners or lessees, as the case may be."

Judgment is affirmed.