## Camilli v. Alfred Gilbert, Inc.

*Paul Lockrey*, for plaintiff.
*Charles Weisman*, for defendant.
*Edward Murphy*, for garnishee.

SPORKIN, *J.*, October 7, 1977—This matter is before us on cross-motions for summary judgment submitted by plaintiff, Lenora Camilli, and garnishee, Travelers Insurance Company, following an appeal by garnishee from an arbitration award entered in favor of plaintiff against garnishee in the amount of $4,908 plus interest.

The dispute between the parties centers upon the effect, if any, of a certain provision in a builder's liability policy ("the policy"), issued by garnishee to defendant Alfred Gilbert, Inc. ("defendant"), upon liability coverage for damages resulting from a fire at a property owned by plaintiff situate at 1509 Naudain Street, Philadelphia, Pennsylvania ("the premises").[1]

---

1. By court-approved stipulation between counsel for plaintiff and counsel for garnishee, representing the parties between whom this contest has arisen, the cross-motions for

The pertinent facts giving rise to these cross-motions may be summarized as follows: Commencing late in 1964, defendant contracted with plaintiff to perform certain building reconstruction work on the premises, which plaintiff intended to use as a personal residence. After more than two-thirds of the said improvements had been completed a fire broke out on February 2, 1965, and destroyed those improvements. It is undisputed that at the time the fire was discovered (about 10:00 p.m.) there was no one on the premises; that the front door was locked; that the instrumentality of the conflagration was a portable oil-fired space heater commonly known as a "salamander;" and that said "salamander" had been left in operation on the premises earlier that day by an agent of defendant, who had a key to the lock on the front door.[2]

As a result of the aforesaid fire damage plaintiff, upon demand, paid to defendant $4,908 above the original renovation contract price in order to have the premises restored to their pre-fire condition. Following such restoration of the premises, defendant completed all the work contracted for originally; plaintiff paid defendant all moneys due under that "original" contract; plaintiff moved into the premises and has resided there.

summary judgment were submitted pursuant to Pa.R.C.P. 1035, and the statement of facts upon which the motions for summary judgment are based consists of the pleadings, the depositions and other discovery made throughout the instant proceedings by plaintiff, by defendant and by garnishee, together with the fire marshal's report incorporated in the pleadings.

2. Plaintiff was the only other person who had a key to the premises.

On October 28, 1966, plaintiff instituted this action (in trespass) (County Court, September term, 1966, no. 9312-B) against defendant to obtain the return of the $4,908 she had previously paid defendant, as detailed above,[3] averring that it was defendant's negligence which caused the conflagration. Specifically, plaintiff alleged, in paragraph 4 of her complaint, that:

"At all times averred the defendant was acting through its agents, servants, workmen and employees who were acting within the scope of their employment and was in exclusive control of the premises at 1509 Naudain Street, which was then a vacant house which the defendant was in the process of renovating and refurbishing for the use of the plaintiff as a residence."

To this particular averment, defendant responded as follows:

"4. Denied. It is denied that the defendant, its agents, servants, workmen or employees were in exclusive control of the premises at the time averred or any other time. On the contrary, the defendant was to enter the premises only during normal working hours for the purpose of doing work. The plaintiff, Lenora Camilli, had complete ownership, possession and control of the premises at all times."

Following completion of discovery, and the placing of the case on the trial list, a default judgment was entered by plaintiff against defendant; and on June 5, 1970, damages were assessed in the

---

3. Although we find it somewhat anomalous that plaintiff should have sought to recoup her losses in this manner, we, of course, proceed to consider the case as it is presented to us.

amount of $4,908 by the court (per Saylor, *J.*) in favor of plaintiff and against defendant.[4]

Subsequently, on August 18, 1972, plaintiff issued a writ of execution on the default judgment naming Travelers Insurance Company as garnishee and designating as the res of the execution, the policy.[5]

The writ of execution was duly served upon garnishee and the res was levied upon by the sheriff of Philadelphia, and interrogatories in garnishment were issued by plaintiff and answered by garnishee.

In responding to the interrogatories, garnishee asserted that an exclusion clause in the policy operated to exclude garnishee from coverage of the fire loss in question. That clause provides that:

"This policy does not apply . . . (h) under Coverage B, to injury to or destruction of . . . (3) . . . property in the care, custody or control of the in-

---

4. The record is not clear as to the precise circumstances under which the default judgment was entered; however, the certificate of readiness filed by plaintiff's counsel on April 18, 1969, contains a request for assessment of damages by a hearing, and on the reverse side thereof the following entry appears: "This case was stricken from the trial list at plaintiff counsel's request by Honorable Stanley Greenberg because defendant counsel advised that defendant is defunct and that the case would not be defended."

5. The policy in question, number KSLG-1393425, had been in effect during the renovation period, and at the time of the fire. Specifically, the policy had been issued for one year, commencing on August 17, 1964, and terminating on August 17, 1965.

It is also pertinent to note that the record does not indicate whether any claim had ever been made by *defendant* against garnishee.

sured or property as to which the insured for any purpose is exercising physical control . . ."

On February 21, 1974, pursuant to the Philadelphia County Rules for Compulsory Arbitration, these garnishment proceedings came before an arbitration panel which entered its award, as heretofore indicated in favor of plaintiff and against garnishee, in the amount of $4,908 plus interest from June 5, 1970. From said decision garnishee filed an appeal to this court and these cross-motions followed.

Turning now to a consideration of the merits of these cross-motions, garnishee contends that since plaintiff in paragraph 4 of her complaint quoted supra, has asserted that defendant was "in exclusive control" of the premises, she cannot now "change" her position with respect to defendant's degree of control in order to avoid the said exclusion provision in the policy.

Plaintiff argues to the contrary that the averments of paragraph 4 of her complaint should not be deemed, as a matter of law, to have the effect of an admission that defendant exercised such a degree of possession or control of the premises so as to bring the exclusion provisions of the policy into play.

We are thus confronted with the task of determining first whether plaintiff is estopped from asserting a position in this garnishment proceeding contrary to the position she took in her complaint in trespass (paragraph 4) as to defendant's exclusivity of control of the premises and, secondly, whether as a matter of law the premises were in the "care, custody or control" of defendant at the time of the fire.

We address ourselves initially to garnishee's contention that plaintiff is bound by her assertion in her complaint in trespass to the effect that at the time of the fire defendant was in "exclusive control" of the premises, and that she is therefore estopped at this stage from asserting a contrary factual position. The general rule as to admissions by pleading is that parties are bound by admissions of fact in their pleadings but that they are *not* bound by mere legal conclusions asserted in those pleadings: 4 Standard Pa. Pract. 458; Srednick v. Sylak, 343 Pa. 486, 23 A. 2d 333 (1941). The question, then, is whether plaintiff's "exclusive control" assertion in her pleading can be considered an allegation of fact or a conclusion of law.

The line of demarcation between allegations of facts and allegations which constitute mere legal conclusions is elusive: 3 Standard Pa. Pract. §§24, 32; and the distinction between the two often blurs. Thus, for example, while an averment of a particular legal status may rest upon a legal conclusion, such an averment may also be one of fact: 3 Standard Pa. Pract. §§24, 33.

Upon consideration of the record, of the briefs and of the arguments of counsel, against the background of the applicable precedents and procedural rules, we believe that the subject assertion by plaintiff that defendant had "exclusive control" of the premises (which was denied by defendant), was intended as a legal conclusion by plaintiff. She was, in our opinion, plainly making an ultimate statement concerning application of a legal doctrine ("exclusive control")—which, like concepts such as "negligence" is at best a mixed question of fact and law—in her claim against defendant for

damages.[6] The facts of the case were well-suited to the application of this doctrine inasmuch as plaintiff was faced with proving, by means of circumstantial evidence, that defendant's negligent handling of the "salamander" caused the conflagration in question.

We note, moreover, the similarity between the instant allegation of exclusive control and the statement at issue in Ham v. Gouge, 214 Pa. Superior Ct. 423, 257 A. 2d 650 (1969). In that case, the Superior Court held that an averment by defendant in a workmen's compensation matter, that plaintiff was *not* its employe, did not preclude said defendant from raising the employer-employe defense in the subsequent action in trespass. The court there held that a mutual mistake of law, where knowledge is equally available to both parties, cannot raise an estoppel: Ham, at 214 Pa. Superior Ct. 425-426. The court also noted that plaintiff could not argue that he changed his position, i.e., withdrew his workmen's compensation suit, as a result of defendant's answer in that action, since the facts upon which defendant's answer was based were equally available to both parties: Id. The Superior Court, citing Culbertson v. Cook, 308 Pa. 557, 565, 162 Atl. 803 (1932), stated that the estoppel doctrine assumes a lack of knowledge on the part of the party claiming the estoppel. Ham, at 214 Pa. Superior Ct. 426.

---

6. Plaintiff filed her complaint in trespass in September, 1966, at which time the doctrine of exclusive control was well established in Pennsylvania law. See Izzi v. Philadelphia Transportation Company, 412 Pa. 559, 195 A. 2d 784 (1963). This doctrine has since been replaced by Restatement, 2nd, Torts §328D. See Gilbert v. Korvette's Inc., 457 Pa. 602, 327 A. 2d 94 (1974).

In the instant suit, garnishee similarly cannot argue in good faith that it relied upon plaintiff's averment in paragraph four of her complaint in trespass in reaching its decision to refuse to defend the action against defendant.[7] Garnishee has made no indication that it had so relied; further, it would have been preposterous and a serious breach of its duty to defend its insured had garnishee abandoned its insured and refused to defend solely on the basis of plaintiff's allegations, without any additional investigation.

One who relies on estoppel must establish the basis for it by clear, precise and unequivocal evidence: Ham, at 214 Pa. Superior Ct. 428. The garnishee has certainly failed to carry its burden on this issue.[8]

---

7. An examination of the record shows that on June 21, 1967, Edward A. Sawin, Jr., Esq., petitioned the court for a rule to show cause why he should not be granted leave to withdraw his appearance. Petitioner stated that he had been retained by garnishee to defend the action for defendant and that garnishee subsequently notified him of garnishee's non-liability under the builder's liability policy presently at issue. The docket entries show that Mr. Sawin's appearance was withdrawn on September 12, 1967, nearly three years before damages were actually assessed against defendant.

8. We also note that garnishee did not raise the issue of estoppel in its answer and new matter to plaintiff's interrogatories in attachment. Pa.R.C.P. 3145 states, in pertinent part: "(a) The procedure between the plaintiff and the garnishee shall, as far as practicable, be the same as though the interrogatories were a complaint and the answer of the garnishee were an answer in assumpsit. (b) The garnishee in his answer under 'new matter' may include . . . (2) any defense . . . which he could assert against the defendant if sued by him . . ."; and in Helms v. Chandler, 423 Pa. 77, 223 A. 2d 30 (1966), our Pennsylvania Supreme Court stated that "[r]ule 3145(b) is intended to afford the garnishee an opportunity to set

We next turn to the more difficult question of whether the facts show that the premises were in the "care, custody or control" of defendant at the time of the conflagration. Garnishee asserts that defendant had sufficient custody and control of the premises to bring it within the exclusionary clause of the policy thereby precluding garnishee's liability. Plaintiff contends that in order for the care, custody or control exclusion to apply, garnishee must show that defendant's occupation of the premises was exclusive of the control of anyone else.

The scope of the "care, custody, or control" exclusion clause has been frequently litigated; but no clear guiding principles have been enunciated by the courts.[9] Some jurisdictions have pronounced the language of the clause to be inherently ambiguous; others have found it to be clear and unambiguous.[10] It is apparent from the conflicting case law that cases involving this clause demand careful factual analysis, for the clarity or ambiguity of the clause will vary with the factual situation to which it is applied: Huntingdon Industries Inc. v. Pennsylvania Mfrs.' Ass'n. Cas. Ins. Co., 49 D. & C. 2d 35 (1969), aff'd per curiam, 440 Pa. 640

forth defenses respecting the property in his possession . . ." Id. 80. Thus, a strong argument can be made that under this Rule and Pa.R.C.P. 1030 (part of the assumpsit procedure referred to in rule 3145(a)), garnishee should have raised the affirmative defense of estoppel as new matter in its answer to plaintiff's interrogatories in attachment. We do not reach that issue, of course, in light of our conclusion as stated above.

9. See Annot., Scope of clause excluding from contractor's or similar liability policy damages to property in care, custody, or control of insured, 62 A.L.R. 2d 1242 (1958).

10. Id.

(1970); Slate Construction Company v. Bituminous Casualty Corp., 228 Pa. Superior Ct. 1, 323 A. 2d 141 (1974).

We note initially that the burden of establishing the affirmative defense of exclusion from coverage under this clause rests with garnishee: Huntingdon, 49 D. & C. 2d at 42, citing Sykes v. Nationwide Mutual Insurance Co., 413 Pa. 640, 198 A. 2d 844 (1964). Moreover, in considering the applicability of the exclusion clause, we are guided by two well-settled principles of insurance law: first, "[i]n the event of ambiguous or uncertain contractual language; rendering the intention of the parties unclear, 'an insurance policy is to be construed most strongly against the insurer and liberally in favor of the insured so as to effect the dominant purpose of indemnity or payment to the insured'" (citations omitted), Slate at 5; and secondly, "'[E]xceptions to the general liability of the insurer are to be strictly construed against the insurance company' Frisch v. State Farm Fire & Cas. Co., 218 Pa. Superior Ct. 211, 214, 275 A. 2d 849, 851, allocatur refused, 218 Pa. Superior Ct. 1x (1971)." Id.

The rationale for the "care, custody, or control" clause has been succinctly discussed by F.D. Cooke, Jr., an insurance company superintendent of claims, as follows:

"There are several different reasons for such an exclusion in the policy. Fundamentally, were it not for the exclusion there would be a greater moral hazard as far as the insurance company is concerned. It also eliminates the possibility of the insured making the insurance company a guarantor of its workmanship.

"The liability policy contemplates payment gen-

erally in situations where the ordinary degree of care is the measure of liability. The premium is determined on that basis. Liability for damage to property in charge of or in the care, custody or control of the insured where there is a bailment is controlled by different rules of law, and as a practical result the hazard is greatly increased.

"There is usually some form of insurance available to cover injury to or destruction of the excluded property at a higher premium which is commensurate with the risk. The exclusion is to eliminate securing the same coverage under a liability policy at cheaper rates." F.D. Cooke, Jr. Care, Custody or Control Exclusions, 1959 Insurance Law Journal 7, 9.

Analyzing the facts in light of the above-quoted purposes of the exclusion clause, we are constrained to find this exclusion clause ambiguous, rendering the intention of the parties to the insurance contract unclear. As heretofore mentioned, plaintiff was the sole owner of the premises; however, the premises were not habitable at the time of the fire since the renovation work was then only about two-thirds complete. Moreover, it is undisputed that both plaintiff and defendant possessed keys to the front door of the premises; that no one was present at the time the fire started; that a representative of defendant left an operating salamander on the first floor landing; and that said salamander ignited the fire in question. Viewing the situation realistically it is clear that defendant's "control" of the premises was limited to a license to enter the premises and perform the renovation work for which the parties contracted. Defendant's contact with the premises certainly did not rise to the level of a bailment, which as Mr. Cooke

explained, is the primary danger contemplated by the exclusion clause. Nor do the instant facts disclose a "greater moral hazard" for the garnishee-insurance company. "It is difficult to conceive how the question of moral hazard could arise with reference to property belonging solely and unconditionally to others [persons other than the insured]." Elcar Mobile Homes, Inc. v. D.K. Baxter, Inc., 66 N.J. Super. Ct. 478, 484, 169 A. 2d 509 (1961).[11]

Finally, the quality of defendant's *workmanship* is in no way an element of the instant case; hence, there is no possibility of garnishee being called upon to guarantee such workmanship. (Rather, the issue here is the quality of care exercised over the *safety* of the premises while performing specific *work* therein.) In sum, the facts of the case before us simply do not conform to the rationale provided for the exclusion clause. Thus, in applying the aforementioned principles of construction for insurance contracts, it is clear to us that garnishee has not carried its burden with regard to the exclusion from coverage.

We find additional support for our holding in Cohen v. Keystone Mutual Casualty Co., 151 Pa. Superior Ct. 211, 30 A. 2d 203 (1943), wherein the Superior Court cited with approval and quoted extensively A.T. Morris & Co., Inc. v. Lumber Mutual Casualty Ins. Co., 163 Misc. 715, 298 N.Y.S. 227, 231 (1937). Morris denied effect to the exclusion where a subcontractor caused damage to the ceil-

---

11. The exclusion clause also deals with "property owned or occupied by or rented to the insured or . . . used by the insured." Cooke's reference to "greater moral hazard" apparently embodies the insurance company's desire to avoid liability in situations where the insured might benefit by falsifying a claim or exaggerating a loss. See Elcar, at 484.

ing of a movie theater while performing work in the theater pursuant to the contract. In pertinent part, the Morris court stated:

"The plaintiff [subcontractor] and its employees were only in the theater because they had a contract to work there. They had no care and custody of the theater property as such, nor did they have any control over it in the sense that a person who has personal property in his possession, such as an automobile, may be said to have control of it. *Possession or control of real property is indicated by an occupation exclusive of the control of any one else.* The plaintiff and its employees were simply in this property temporarily for the purpose of doing the work." (Emphasis supplied.) Cohen, 215-216.

It is obvious to us that defendant here did not occupy the premises exclusive of the control of plaintiff, the owner of said premises, and did not, therefore, have the *quality* of possession, custody or control as to which the exclusionary clause of the policy was directed for the protection of garnishee.

Accordingly, in light of the foregoing, we enter the following

## ORDER

And now, October 7, 1977, upon consideration of the cross-motions of plaintiff, Lenora Camilli, and garnishee, Travelers Insurance Company, for summary judgment and after due consideration of said motions, supporting documents, pleadings, interrogatories, depositions, and stipulation of counsel, it is hereby ordered and decreed that summary

judgment be entered in favor of plaintiff Lenora Camilli, and against garnishee, Travelers Insurance Company, in the sum of $4,908 plus interest from June 5, 1970.