[Civ. No. 31764.    Second Dist., Div. Three.    Sept. 27, 1968.]

EMPLOYERS' SURPLUS LINES INSURANCE COMPANY, Plaintiff and Appellant, v. FIREMAN'S FUND INSURANCE COMPANY et al., Defendants and Respondents.

Kirtland & Packard and Harold J. Hunter, Jr., for Plaintiff and Appellant.

Sikes, Pinney & Matthew, Robert Sikes, Betts & Loomis, Wise, Kilpatrick & Clayton, Buck, Burrows & Smith, John A. Loomis, George E. Wise and Peter Burrows for Defendants and Respondents.

FORD, P. J.—The plaintiff Employers' Surplus Lines Insurance Company (hereinafter designated by the name Employers' Surplus) sought a declaratory judgment as to its rights and duties and the respective rights and duties of other insurance companies under policies of insurance issued to the defendant Crescent Wharf & Warehouse Co. (hereinafter designated by the name Crescent Wharf), a corporation engaged in the business of stevedoring.[1] The plaintiff Employers' Surplus has appealed from the judgment.

The nature of the controversy is readily made apparent by the findings of fact. Portions of such findings relating to the claims involved are as follows: (1) Since March 1, 1963, defendant Crescent Wharf has been sued in 30 different suits by means of third-party complaints or cross-complaints asserted against it by the owners of vessels whereon Crescent Wharf was employed for cargo handling and stevedoring services. In each of those suits an employee of Crescent Wharf who was working as a stevedore for Crescent Wharf during the period between March 1, 1963, and July 14, 1964, sued the owner of the vessel for damages for personal injuries sustained by the employee while performing cargo operations on board or about the vessel. Each cross-complaint or third-party complaint of the shipowner against Crescent Wharf was based upon the doctrine of *Ryan Co.* v. *Pan-Atlantic Corp.*, 350 U.S. 124[2] [100 L.Ed. 133, 76 S.Ct. 232], or upon an express indem-

---

[1]The other defendants are The Stuyvesant Insurance Company (hereinafter designated by the name Stuyvesant), Fireman's Fund Insurance Company (hereinafter designated by the name Fireman's Fund), and Pacific Employers Insurance Company (hereinafter designated by the name Pacific Employers). Defendant Stuyvesant filed a cross-complaint for declaratory relief and indemnification, naming the plaintiff and the other defendants as cross-defendants. Reliance Insurance Company (hereinafter designated by the name Reliance) filed a complaint in intervention for declaratory and other relief.

[2]*Ryan* involved the matter of the liability of a stevedoring contractor to reimburse a shipowner for damages paid by the latter to one of the contractor's longshoremen on account of injuries received by him in the course of his employment on shipboard. The Supreme Court stated (350 U.S., at page 131 [100 L.Ed. at p. 140]): ''The shipowner's action here

nity agreement between the shipowner and Crescent Wharf. (2) At the time of each accident Crescent Wharf was performing stevedoring services pursuant to agreement between it and the respective shipowner. As stipulated by the parties, the following three claims are examples of the types of agreements under which the stevedoring work was performed by Crescent Wharf in the claims to which reference has been made: (a) The claim of William H. Johnson, injured on May 30, 1963, while performing work under an oral agreement between Crescent Wharf and the shipowner for stevedoring services; (b) The claim of Joe Edwards, injured on April 4, 1963, while performing stevedoring services under a written contract between Crescent Wharf and the shipowner for stevedoring services; (c) The claim of Benjamin Iacono, injured on February 21, 1964, while performing stevedoring services under a written agreement between Crescent Wharf and the shipowner for stevedoring services, which written contract contained an express ''hold harmless'' clause.

Portions of the findings of fact relating to the insurance contracts issued by Stuyvesant and Employers' Surplus, respectively, are as follows: (1) On or about March 1, 1963, Stuyvesant issued to Crescent Wharf its public liability and property damage policy which was in effect from March 1, 1963, to and including July 14, 1964. Therein it is stated that the policy is ''To cover the Legal and/or Assumed and/or contractual Liability of Assured for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time result-

---

is not founded upon a tort or upon any duty which the stevedoring contractor owes to its employee. The third-party complaint is grounded upon the contractor's breach of its purely consensual obligation *owing to the shipowner* to stow the cargo in a reasonably safe manner. Accordingly, the shipowner's action for indemnity on that basis is not barred by the Compensation Act.'' The Supreme Court further stated (350 U.S., at pages 133-134 [100 L.Ed. at pp. 141-142]): ''The shipowner here holds petitioner's uncontroverted agreement to perform all of the shipowner's stevedoring operations at the time and place where the cargo in question was loaded. That agreement necessarily includes petitioner's obligation not only to stow the pulp rolls, but to stow them properly and safely. Competency and safety of stowage are inescapable elements of the service undertaken. The obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product. The shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service.''

ing therefrom, sustained by any person or persons . . . ." The policy limit is stated to be in the sum of $25,000 for any one claim. A further provision of the policy is that ''this insurance is a primary insurance and in the event of any other insurance carried by Assured independently or jointly with others, being applicable, such other insurance to be considered as excess insurance.'' It is also provided that the policy does not apply, *"except with respect to liability assumed under contract,* to bodily injury or sickness, disease or death of any employee of the Assured while engaged in the employment of the Assured, or to any obligation for which the Assured or any company as his insurer may be held liable under any Workmen's Compensation Law.'' (Italics added.) A further provision is: ''In all cases involving the Assured's liability to steamship companys [*sic*] or others for Bodily Injury to Assured's Employees: $1,250.00 shall be deducted from the amount of each claim including claims expense.''

(2) On or about March 1, 1963, plaintiff Employers' Surplus issued to Crescent Wharf its excess public liability and property damage policy, which was in effect from March 1, 1963, to and including July 14, 1964. That policy afforded Crescent Wharf excess coverage, over and above the $25,000 limit of the Stuyvesant policy, in the amount of $475,000 for each claim. The Employers' Surplus policy was intended by the parties to afford coverage for the same risks and for the same claims as was afforded by the primary policy of insurance issued to Crescent Wharf by Stuyvesant. In the Employers' Surplus policy it is provided that the insurance afforded thereunder ''is to pay on behalf of the Assured all sums which the Assured shall become legally obligated to pay, or by final judgment be adjudged to pay, to any person or persons as damages (a) for bodily injury . . . caused by accident occurring during the period mentioned in the Schedule and arising out of such hazards as are set forth in Item 4 of the Schedule and which are also covered by and defined in the policy/ies specified in the Schedule and issued by the 'Primary Insurers' stated therein, including endorsements and amendments attached thereto.'' A further provision is that ''In respect of the hazards set forth in Item 4 of the Schedule this Insurance is subject to the same warranties, terms and conditions (except as regards the premium, the obligation to investigate and defend, the renewal agreement (if any), the amount and limits of liability other than the deductible or self-insurance provision where applicable, and except as

otherwise provided herein) as are contained in or as may be added to the policy/ies of the Primary Insurers prior to the happening of an accident for which claim is made hereunder . . . .'' An endorsement issued and dated July 15, 1964, but by its terms made effective as of March 1, 1963, provides for the deletion of a prior provision and the substitution therefor of the following provision: ''1. This Insurance Does Not Cover: (a) Liability for Bodily Injury to employees of the Assured injured during the course of their employment but *this Exclusion does not apply to such liability assumed under any contract* (other than a Contract of Employment) *as is covered by the policy/ies of the Primary Insurers.*'' (Italics added.)

With respect to the Fireman's Fund and Pacific Employers policies, respectively, portions of the findings of fact are as follows: (1) On or about August 1, 1962, Fireman's Fund issued to Crescent Wharf its policy entitled ''Standard Workmen's Compensation and Employers' Liability Policy'' and concurrently therewith Fireman's Fund issued to Crescent Wharf another policy covering the liability of Crescent Wharf under the Longshoremen's and Harbor Workers' Compensation Act. Both policies were in effect during the period of August 1, 1962, to August 1, 1963. The policy relating to the Longshoremen's and Harbor Workers' Compensation Act contains an endorsement in the following language: ''It is mutually understood and agreed that except as this policy may be otherwise extended by endorsement, no other liability of any nature whatsoever, except as defined by the said Longshoremen's and Harbor Workers' Compensation Act, is covered hereunder.'' That policy contains no endorsement extending its coverage. Under ''Coverage B'' of the other Fireman's Fund policy it is provided that the insurer shall ''pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease . . . sustained . . . by any employee of the insured arising out of and in the course of his employment by the insured either in operations in a state designated in Item 3 of the declarations or in operations necessary or incidental thereto.'' Under the heading of ''Exclusions'' that policy contains the provision that it does not apply ''under coverage B, to liability assumed by the insured under any contract or agreement.'' (2) On or about August 1, 1963, Pacific Employers issued to Crescent Wharf its policy entitled ''Workmen's Compensation and Employers' Liability Policy,'' which was in effect during the period

from August 1, 1963, to July 14, 1964. The policy contains provisions which are the same as those set forth hereinabove with respect to the Fireman's Fund policy entitled "Standard Workmen's Compensation and Employers' Liability Policy." In addition, embodied in an endorsement to the Pacific Employers policy is the following provision: "The obligations of the Company under paragraph One (b) of the policy are limited to the liability imposed by law upon this Employer for negligence but *specifically exclude any liability assumed by this Employer under any contract entered into with any other person, association or organization.*" (Italics added.)

Portions of the conclusions of law of the trial court are that, for the period of March 1, 1963, to July 14, 1964, the Stuyvesant policy covers every claim for indemnity made against Crescent Wharf by the owner of a ship for the liability of such owner for damages for injuries suffered by a stevedore employed by Crescent Wharf on or about the ship in the performance of a stevedoring contract between the owner of the ship and Crescent Wharf, whether the contract is oral or written, and that the Employers' Surplus policy constitutes excess insurance over and above the Stuyvesant policy limit of $25,000 for injury to one person with respect to the same risks and claims as are covered by the Stuyvesant policy, except as to costs of defense of any such claim. Other conclusions of law are that neither Fireman's Fund nor Pacific Employers are, as to their respective policies, under any obligation to furnish a defense for, or to pay, any claim that is covered by the Stuyvesant and Employers' Surplus policies. Judgment was entered accordingly.

On this appeal the position of the plaintiff Employers' Surplus is that, except for those cases wherein the relationship between Crescent Wharf and the shipowner involved was governed at the time of the accident by a contract containing an express and unequivocal "hold harmless" agreement, Employers' Surplus policy does not afford coverage to Crescent Wharf. Employers' Surplus further contends that the policies issued by Fireman's Fund and Pacific Employers do afford coverage of the nature involved in this case. For reasons which will be stated, the contentions of Employers' Surplus are untenable.

As has been noted, the policy of Employers' Surplus contains a provision that the insurance afforded does not cover liability for bodily injury to employees of Crescent Wharf

injured during the course of their employment, but it is expressly provided that such exclusion does not apply to *such liability assumed under any contract* (other than a contract of employment) *as is covered by the policy of the primary insurer*. As has also been noted hereinabove, the Stuyvesant policy affords coverage as to "liability assumed under contract" with respect to claims involving Crescent Wharf's liability to shipowners arising out of bodily injury to Crescent Wharf's employees. The question presented for resolution is what constitutes liability assumed under contract as used in the Stuyvesant and Employers' Surplus policies.

The governing law is found in *Indemnity Ins. Co.* v. *California Stevedore & Ballast Co.* (9th Cir. 1962) 307 F.2d 513, a case involving liability policies issued to contracting stevedores. The court stated (page 514) : "And when longshoremen work aboard vessels they are maritime workers having the benefits of the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C.A. § 901 et seq.; hereinafter referred to as 'the Act'). The Act gives longshoremen their exclusive remedy against their employers for any personal injury arising out of their employment. (33 U.S.C.A. § 905.) Therefore a longshoreman cannot sue his employer for personal injuries arising out of his employment. He can, however, sue the owner or operator of the vessel aboard which he was injured." In that case, as in the case presently before this court, in actions by the contracting stevedores' employees against shipowners for damages for bodily injuries sustained while performing stevedore services, the shipowners filed third-party complaints against the contracting stevedores. In each of those actions the employees had performed their services under a written contract between the shipowners and the contracting stevedores.

In the *Indemnity Ins. Co.* case the court pointed out that the contracts between the contracting stevedores and the shipowners are maritime contracts which are to be construed in accordance with federal law. The court then stated that, after the reviewing court first decides the terms of such contracts, the question presented is whether the claims asserted by the shipowners against the contracting stevedores are within the coverage of the insurance contracts, that is, whether the contracting stevedores' liabilities to the shipowners were assumed under a written contract. (307 F.2d, at pages 516-517.) After noting that under the federal law as set forth in *Ryan* (see footnote 2 of this opinion) the contracting stevedores' "war-

ranties to perform their services in a workmanlike manner were the essence of their contracts with the shipowners," the court stated (307 F.2d at page 517) : "Thus it appears clear that appellees' [the contracting stevedores'] liabilities to the shipowners were assumed under written contracts. While it may be true that the same liabilities could be imposed under an oral contract, the fact remains that, here, appellees, either as good business or by good fortune, assumed the liabilities to the shipowners under a written contract."

Turning to the question of whether the liabilities imposed upon the contracting stevedores by the shipowners were within the coverage extended by the insurance policies, the court in the *Indemnity Ins. Co.* case held that they were, stating (307 F.2d, at pages 517-518) : "Being liabilities assumed under written contracts, the clear and unambiguous language of appellant's insurance policies except these liabilities from Exclusion (c). This conclusion is consistent with California law. . . . Here there is no ambiguity. There is nothing to construe. Even if there were an ambiguity, then . . . the circumstances of the case at bar would require appellant's insurance policies to be construed in the favor of appellees and against the insurance company. *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437 [296 P.2d 801, 57 A.L.R.2d 914]. The result in either case is coverage."

In the case presently before this court the Stuyvesant and Employers' Surplus policies do not restrict coverage to liabilities assumed under a *written* contract, the word "written" being omitted in the pertinent provision of each policy. The liability imposed upon Crescent Wharf by the shipowners is within the coverage afforded by those policies whether the contract between Crescent Wharf and a shipowner was oral or whether it was written. Obviously, coverage is afforded with respect to a written contract in which there was embodied an express "hold harmless" clause as to liability of the nature of that involved in the present case; such a clause relates to an obligation which, as stated in *Ryan* (see footnote 2 of this opinion), is "of the essence" of the stevedoring contract.

In *Booth S.S. Co.* v. *Meier & Oelhaf Co.* (2d Cir. 1958) 262 F.2d 310, a shipowner filed a third-party complaint against Meier & Oelhaf Co., machinists, claiming indemnity with respect to whatever sum might be awarded against it in the main action on behalf of the plaintiff, an employee of Meier & Oelhaf Co., for injuries he sustained while engaged in engine

repair work aboard the vessel. The agreement between Meier & Oelhaf Co. and the shipowner was oral. The plaintiff prevailed on the issue of the unseaworthiness of the vessel and recovered judgment against the shipowner. After holding that federal maritime law governed the construction of the agreement there in issue, the court, quoting from *Ryan* (see footnote 2 to this opinion), stated (262 F.2d, at page 313): "It cannot be disputed that the services performed were carried out pursuant to an agreement between Booth and Meier. That the terms of the agreement may have been oral, or implied from the course of dealing between the parties and custom of the trade, or part oral and part according to custom, can make no difference. The warranty here involved is an incident of the agreement, 'it is [appellee's] warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product.' *Ryan, supra,* 350 U.S. at pages 133-134 [100 L.Ed. at pp. 141, 142], 76 S.Ct. at page 237. The way in which the contract was arrived at or preserved is irrelevant."

■ With respect to the Fireman's Fund policies, as has been noted, one thereof contains a provision that the only liability covered thereunder is that defined by the Longshoremen's and Harbor Worker's Compensation Act. There is no endorsement extending such coverage. The language in the other Fireman's Fund policy and in the Pacific Employers policy upon which the plaintiff's contention of coverage with respect to the liability herein involved is based is in each instance limited by a further provision that such coverage is not afforded as to liability assumed by the insured under any contract or agreement. Since the pertinent liability is one assumed by Crescent Wharf under a contract or agreement, such policies afforded no coverage of the nature of that asserted by the plaintiff Employers' Surplus.

The judgment is affirmed.

Cobey, J., and Moss, J., concurred.