119 N.J. Super. 446 (1972)
292 A.2d 42
KARADIS BROS. PAINTING CO., INC., PLAINTIFF,
v.
PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, AN INSURANCE CORPORATION OF THE STATE OF PENNSYLVANIA; SKYCLIMBER, INC., AND WESTERN GEAR CORPORATION, CORPORATIONS OF THE STATE OF CALIFORNIA; MOULTON LADDER CO., A PENNSYLVANIA CORPORATION; AND ANNE J. SMYTHE, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF JOHN PATRICK SMYTHE, DECEASED, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided: June 20, 1972.
*448 Mr. John Montis for plaintiff.
Mr. Richard I. Wood for defendant Pennsylvania National Mutual Casualty Insurance Company (Messrs. Lewis, Siegel & Wood, attorneys).
Mr. David A. Parker for defendants Skyclimber, Inc., and Western Gear Corporation (Messrs. Parker, McCoy & Criscuolo, attorneys).
Mr. Frank P. Addas for defendant Moulton Ladder Co. (Messrs. James & Addas, attorneys).
Mr. Michael N. Kouvatas for defendant Anne J. Smythe, administratrix ad prosequendum of the estate of John Patrick Smythe, deceased.
SEIDMAN, J.C.C. (temporarily assigned).
Plaintiff, Karadis Bros. Painting Co., Inc. (Karadis), brings this declaratory judgment action to determine whether a policy of liability insurance issued to it by defendant Pennsylvania National Mutual Insurance Company (insurer) obligates the insurer to defend a third-party complaint in a lawsuit now pending in the Law Division, and to pay, within the limits of coverage, any judgment that may be rendered therein against the insured.
Other defendants, whose involvement will appear hereinafter, are Skyclimber, Inc.; Western Gear Corporation; Moulton Ladder Co.; and Anne J. Smythe, administratrix ad prosequendum of the estate of John Patrick Smythe, deceased.
*449 Counsel have agreed to submit the issues to the Court for determination on the basis of the pleadings and memoranda of law.
These proceedings are the outgrowth of a death action instituted in the Law Division, Burlington County. The complaint in that suit relates, in substance, that, on October 17, 1969, John Patrick Smythe, an employee of Karadis, a contractor engaged to paint a water tower in Willingboro, was working on a scaffold attached to a mechanized hoist; and that, allegedly because of negligence in the design and manufacture of the hoist and in its maintenance, the scaffold collapsed, causing Smythe to fall to his death. It is asserted that Karadis was utilizing at the time a motor hoist device leased from Moulton Ladder Co. and manufactured and distributed by Skyclimber, Inc., a subsidiary of Western Gear Corporation. The complaint charges Skyclimber, Inc., Western Gear Corporation, and Moulton Ladder Co. with negligence and breach of warranty. In addition, it is alleged that Moulton Ladder Co. failed to inspect, maintain and repair the hoisting device. Karadis was not joined as a defendant, presumably because the decedent was its employee.
In their answer, Skyclimber, Inc., and Western Gear Corporation crossclaimed against Moulton Ladder Co. for contribution under the Joint Tortfeasors Act and for indemnification both on the theory of "vicarious liability" and under a written "hold harmless" agreement.
Moulton Ladder Co. filed a third party complaint seeking indemnification from Karadis for any adverse judgment that might be recovered in the lawsuit. The first two counts are based upon "hold harmless" provisions of the rental agreement between it and Karadis. The third count claims a breach by Karadis of its alleged contractual obligation to supply insurance coverage for the lessor.
The existence of a general liability policy is not disputed; however, the insurer denies coverage and refuses to defend the third party complaint on the ground that the obligations, *450 if any, of its insured to indemnify Moulton Ladder Co. are contractual ones excluded from the policy.
On September 30, 1969, Moulton Ladder Co. and Karadis executed a "Rental Contract and Receipt Form" whereby Skyclimber hoisting equipment was leased to Karadis to be used at a location described as "Willingboro Water Tank." The equipment consists of motorized hoisting devices attached to each side of a scaffold and operating on suspended wire ropes fastened to the top of the structure.
Among the terms and conditions contained in the rental agreement are two paragraphs which provide, in pertinent part, as follows:
3. The lessee agrees to maintain said machinery and equipment in the condition as when delivered to it by lessor, usual wear and tear excepted, and to pay all claims and damages arising from defects therein or from the use or handling of said machinery and equipment, whether from injuries to persons or property and to pay for all damages to the equipment except the usual and ordinary wear and tear during the life of this contract * * *

* * * * * * * *
5. * * * the lessee agrees to hold the owner, manufacturer and dealer as lessor harmless from any claim of whatsoever kind or nature as a result of the use of the above enumerated equipment ... In no event shall the lessor be liable for contingent or consequential damages nor shall the lessor be liable for any damages arising out of or by reason of faulty, improper or negligent use of the equipment. This hold harmless agreement shall encompass any claims arising from either or both personal injury and property damages caused as a result of the use or storage of this equipment both by the employer of the lessee or any third parties and the lessee also agrees to hold the lessor harmless from any and all claims arising out of or in connection with the active or passive use or storage of the lessor's equipment while in the possession or control of the lessee or its agents, servants or employees * * *
Another provision in the agreement requires the lessee to protect the lessor with full insurance "to cover damage occasioned by fire, theft, flood, explosion, accident, act of God, or any other cause that might occur during the life of this lease."
*451 It is evident that a resolution of the problem in this case turns on whether the claims asserted against Karadis in the third-party complaint, clearly contractual in origin, are encompassed within the insuring agreements of the liability policy involved herein. The policy provisions are quite complex and must be examined carefully in order to focus attention on what is actually a rather narrow issue. The applicable portions are summarized as follows:
1. The insuring agreement: It is to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury caused by an occurrence.
2. Exclusion: The policy does not apply to liability assumed by the insured under any contract or agreement except an incidental contract.
3. Incidental contract: Such contract means, among others, an elevator maintenance agreement.
4. Elevator: This is defined as "any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an automobile servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet."
It is not unusual for liability insurance policies to exclude from coverage liability assumed by an insured under a contract not defined in the policy, generally one in which the insured agrees to indemnify to save harmless a third party. See Annotation, Scope and effect of clause in liability policy excluding from coverage liability assumed by insured under contract not defined in policy, such as one of indemnity", 63 A.L.R.2d 1122, § 1. However, the exclusion clause *452 does not preclude coverage, even though some sort of liabilty is assumed by contract, where the insured would have been liable regardless of his contractual undertaking. United States Fidelity & Guaranty Co. v. Virginia Engineering Co., 213 F.2d 109, 63 A.L.R.2d 1114 (4 Cir.1954); Lumbermen's Mutual Cas. Co. v. Town of Pound Ridge, 362 F.2d 430 (2 Cir.1966); Larson Construction Co. v. Oregon Automobile Ins. Co., 450 F. 2d 1193 (9 Cir.1971); Abajian v. Aetna Casualty & Surety Co., 232 F. Supp. 710 (D. Vt. 1964); Home Insurance Co. v. Southport Terminals, Inc., 240 So.2d 525 (Fla. Ct. App. 1970); Aetna Casualty & Surety Co. v. Starrett, 102 Ga. App. 278, 115 S.E.2d 641 (Ct. of App. 1960); Board of Trade Livery Co. v. Georgia Cas. Co., 160 Minn. 490, 200 N.W. 633 (Sup. Ct. 1924); O'Dowd v. American Surety Co. of N.Y., 3 N.Y.2d 347, 165 N.Y.S.2d 458, 144 N.E.2d 359 (Ct. of App. 1957); Modern Scaffold Co. v. Karell Realty Corp., 28 A.D.2d 581, 279 N.Y.S.2d 436 (App. Div. 1967); A.T. Morris & Co. v. Lumber Mut. Casualty Ins. Co., 163 Misc. 715, 298 N.Y.S. 227 (Mun. Ct. 1937); Labberton v. General Cas. Co. of Am., 53 Wash.2d 180, 332 P.2d 250 (Sup. Ct. 1958).
See also Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 520-522 (1965); Hackensack Water Co. v. General Accident, etc., Ltd., 84 N.J. Super. 479, 484 (App. Div. 1964).
Liability assumed by a contract not defined in the policy is excluded from coverage under such exclusion clause where the contractual obligation was one which would not have been independently imposed upon him by law. Union Paving Co. to Use of United States Casualty Co. v. Thomas, 186 F.2d 172 (3 Cir. 1951); Larsen v. General Casualty Co., 99 F. Supp. 300 (D. Minn. 1951), aff'd General Casualty Co. of Wisconsin v. Larson, 196 F.2d 170 (8 Cir.1952); Employers' Surplus Lines Ins. Co. v. Fireman's F. Ins. Co., 266 Cal. App.2d 183, 71 Cal. Rptr. 838 (Ct. of App. 1968); St. Louis Police Relief Ass'n v. Aetna Life Ins. Co., 236 Mo. App. 413, 154 S.W.2d 782 (Ct. of App. 1941); Maryland Casualty Company v. Waumbec Mills, Inc., *453 102 N.H. 200, 152 A.2d 619 (N.H. Sup. Ct. 1959); Weissblum v. Glens Falls Ins. Co., 40 Misc.2d 964, 244 N.Y.S.2d 689 (Sup. Ct. 1963).
In the instant case, the insured cannot be exposed to liability in the Law Division suit unless by reason of an obligation assumed by contract. Since the decedent was its employee, Karadis, in the absence of an express contractual undertaking, is protected by the workmen's compensation statute from a claim for indemnity of for contribution as a joint tort-feasor because of injury to or death of the employee Public Service Elec. and Gas Co. v. Waldroup, 38 N.J. Super. 419, 436-438 (App. Div. 1955); Farren v. N.J. Turnpike Authority, 31 N.J. Super. 356, 360-361 (App.Div. 1954). See also Wellenheider v. Rader, 49 N.J. 1, 10 (1967). Coverage, therefore, must depend upon whether the insured's obligation, if any, to indemnify Moulton Ladder Co. is a contractual one defined in the policy.
As noted above, the policy excludes liability assumed by the insured under any contract or agreement except an incidental contract, five kinds of which are listed. Four of the categories  leases of premises, easement agreements, undertakings to indemnify a municipality, and sidetrack agreements  are obviously not relevant. The fifth is an elevator maintenance agreement.
There is no doubt that so much of the third-party complaint as seeks indemnification by reason of Karadis' alleged failure to provide full insurance coverage for the lessor, claimed to be required by the terms and conditions of the rental agreement, is not within the scope of the policy in question. Whatever liability was assumed by the insured in this respect is not within any of the incidental contracts listed in the policy. The Court concludes that the policy provides no coverage for this segment of the third-party complaint and that the insurer is under no obligation to provide a defense or to pay any sums which the insured might become legally obligated to pay as damages therefor.
*454 The remainder of the third-party complaint presents a more difficult problem. The issue is whether the rental agreement herein, is, at least in part, an incidental contract for the maintenance of an elevator.
Since the agreement is directly related to the insured's business of a painting contractor, it is, in that context, an incidental contract; that is, one which belongs to or is connected with what the insured has to do in the operation of its business. Paragraph 3 of the terms and conditions of the contract requires the lessee to maintain the machinery and equipment in the same condition as when delivered, usual wear and tear excepted. To this extent, the contract contains a maintenance provision. But before one can conclude that an elevator maintenance agreement is involved, one must first determine whether the hoisting device in question is an elevator as defined in the policy.
In a broad sense, an elevator is any hoisting or lowering device. See Williams v. Rheas, 99 Pa. Super. 438 (Super. Ct. 1930). The policy in this case defines it as "any hoisting or lowering device to connect floors or landings," as well as the appurtenances thereto. The insurer contends that since the hoist in question does not go between floors and landings, there can be no coverage.
It was noted earlier that the term "elevator," as defined in the policy, does not include, among other things, "a hoist without a platform outside a building if without mechanical power or if not attached to building walls." Karadis reasons that although it is a hoist outside a building, the Skyclimber unit has a platform and is mechanically powered; therefore, since it is not excluded from the definition of "elevator," the device is an elevator within the policy definition.
However, the Skyclimber unit is not an elevator as defined in the policy merely because the exclusion does not apply. It is true that the hoisting device and attached scaffolding here involved, the purpose of which was to raise or lower workmen engaged in painting a structure, can be *455 considered an elevator. But the policy definition of an elevator qualifies and limits the "hoisting or lowering device" to one which connects floors or landings. The water tower being painted obviously had no floors and there is no proof that there were landings, which are, generally, the floor at the head or foot of a flight of stairs or a platform between flights of stairs. Random House Dictionary of the English Language (Unabridged Ed., 1966). In any event, it is clear that the sole purpose of the Skyclimber unit was to enable the workmen to paint the exterior of the water tower by raising or lowering them as needed, and not to connect floors or landings.
Courts are, of course, bound to protect the insured to the full extent that any fair interpretation will allow; and if the controlling language will support two meanings, one favorable to the insurer, and the other favorable to the insured, the interpretation sustaining coverage must be applied. Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1 (1961). The corollary principle, however, is that the words of an insurance policy must be given their ordinary and usual meanings and if there is no ambiguity, a strained or distorted construction will not be applied. Brynildsen v. Ambassador Ins. Co., 113 N.J. Super. 514, 518 (Law Div. 1971). See also Wiliams v. State Farm Mutual Auto Ins. Co., 99 N.J. Super. 377, 382 (Law Div. 1968), aff'd 104 N.J. Super. 403 (App. Div. 1969), aff'd 54 N.J. 580 (1969).
In the instant case, the definition of an elevator as a hoisting or lowering device to connect floors or landings is clear and unambiguous. The portion of the clause which excludes certain types of devices may be somewhat difficult to unravel, but it cannot have the effect of enlarging the definition. In short, the hoisting equipment involved herein, even though it had a platform suspended by wire ropes and a mechanically powered device to raise and lower it, and was outside the structure, could not thereby become an elevator as defined in the policy where, as here, the equipment did *456 not and was not intended to connect floors or landings, but was, instead, to be used in the painting of a water tower.
It follows, therefore, that the liability, if any, assumed by Karadis under the rental contract did not involve an agreement to maintain an elevator as defined in the policy. The insurance provided by the policy does not apply to such liability. The insurer is not required to provide a defense to the claim for indemnification or to pay any sums which the insured might become legally obligated to pay as damages therefor.
The "hold harmless" provisions of the rental agreement are very broad, covering "any claim of whatsoever kind or nature as a result of the use of "the equipment in question", "any claims arising from either or both personal injury and property damages caused as a result of the use or storage of this equipment," and "all claims arising out of or in connection with the active or passive use or storage of the lessor's equipment." Since the contractual liability covered by the policy is limited to that arising out of an incidental contract, and since the pertinent incidental contract here must be one for the maintenance of an elevator, it is clear that any liability assumed by the insured beyond that resulting from the obligation to maintain the equipment (assuming it were an elevator as defined in the policy) would not be covered by the policy.
Judgment will be entered in favor of the insurer consistent with the conclusions set forth hereinabove. A form of such judgment should be submitted pursuant to R. 4:42-1.