A. T. MORRIS & CO., INC., Plaintiff, *v.* LUMBER MUTUAL CASUALTY INSURANCE COMPANY OF NEW YORK, Defendant.

Municipal Court of New York, Borough of Queens, First District, July 7, 1937.

*Benjamin H. Whitestone*, for the plaintiff.

*McDevitt & Stricker* [*Herbert A. McDevitt* of counsel], for the defendant.

KEITH, J. This action is brought by the plaintiff to recover the sum of $628.11, with interest from July 10, 1936, upon a public liability policy made by the defendant, which was to be in full force and effect as of the 4th day of April, 1936, to the 4th day of April, 1937.

On or about May 12, 1936, at the request of plaintiff, the defendant added an indorsement to said policy so that it covered damage to the property as well as for personal injuries.

On May 8, 1936, plaintiff entered into a contract with Buensod-Stacey Air Conditioning, Inc., as a subcontractor for certain work in the Tivoli Theatre at 365 Fulton street, Brooklyn, N. Y. Among the general conditions in said contract it was provided in section 4 that: "The sub-contractor hereby agrees to assume entire responsibility and liability in and for any and all damage or injury of any kind or nature whatever, to all persons, whether employees or otherwise, and to all property, caused by, or resulting from the execution of the work provided for in the contract, or occurring in connection therewith, and further agrees to indemnify and save harmless the Contractor and the Owner or his agents, servants and employees, from and against any and all loss, expense, damage or injury caused or occasioned, directly or indirectly, by his act or negligence, or the act or negligence of any sub-contractor or his agents or employees in performing any of the work called for in this contract."

It appears that the plaintiff commenced work within a few days subsequent to May 8, 1936, and that said work continued until the end of June, 1936. At the time the work was started the ceiling and dome of the Tivoli Theatre were inspected by Anthony T. Morris, the president of the plaintiff company, and found to be in proper condition, without evidence of cracks, fallen plaster or other defects.

It appears that during the process of the work the workmen of the plaintiff, although expressly warned not to do so by both the president of the plaintiff company and by a man named Hoffman, walked upon the ceiling, causing same to crack in several places, and finally to fall. The contractor, the Buensod-Stacey Air Conditioning, Inc., ordered a third party to repair the damage, and withheld the amount paid for the repairs from the payment due to A. T. Morris & Co., Inc. A. T. Morris & Co., Inc., then commenced an action against Buensod-Stacey Air Conditioning, Inc., for the balance, and Buensod-Stacey Air Conditioning, Inc., set up a counterclaim for $628.11, which was the cost of repairing the ceiling. In that counterclaim the Buensod-Stacey Air Conditioning Inc., set forth that under the terms of the contract the plaintiff

had agreed to indemnify it in the event that it damaged the property of another party, and on that claim it recovered against the plaintiff.

The defendant insurance company resists the payment of the amount sued for in this action upon the following grounds:

" 1. That by the terms of the policy, the defendant only agreed to indemnify the assured against loss by reason of the *liability imposed upon him by law*, and that this is not such a liability.

" 2. That under the heading of Exclusions, Paragraph A of the policy, subdivision 4, it is provided: ' Unless specifically written in or endorsed hereon this policy shall not cover claims arising from: * * * (4) any liability of others assumed by the Assured under any contract.'

" 3. That said policy in paragraph 2 of the property damage endorsement provided that: ' This endorsement shall apply to such injury to, or destruction of such property if *resulting solely and directly from an accident* due to the business operation of the Assured as mentioned below, and more completely described in Item 2 of the Declarations forming a part of this policy to which this endorsement is attached.'   In this connection defendant contends that the damage to the ceiling in question did not result from an accident, for the reason that the falling of the ceiling was immaterial, the real damage being due to the fact that the workmen walked over the ceiling contrary to their instructions over a period of time.

" 4. Finally defendant claims it is not liable under the public liability policy for the reason that the policy proper bore an endorsement which, under section 2, contains the following clause: ' It is agreed with the Assured, named and described as such in the policy to which this endorsement is attached, as respects injury to, or destruction of property other than the property owned, leased, occupied by or used by, or in the care, custody or control of the Assured or any of his employees.' "

After considering each of the claims of this defendant as to why it should be free from liability under this policy, I am unable to find any merit in any of them. *First*, I am of the opinion that this is a liability imposed upon the plaintiff by law.   To my mind, it is immaterial that plaintiff, in his contract with Buensod-Stacey Air Conditioning, Inc., under paragraph 4 of general conditions, headed liability insurance, agreed to assume entire responsibility for any and all damage or injury of any kind or nature to all persons, whether employees or otherwise, and to all property, caused by, or resulting from, the execution of the work provided for in the contract, or occurring in connection therewith. A reasonable interpretation of this language, to my mind, clearly shows that it

only refers to the work to be done by this plaintiff or its employees under the contract between itself and the contractor, Buensod-Stacey Air Conditioning, Inc. Plaintiff did not agree, nor was it the intent of the parties, that it should be liable for damage or injury to personal property done by third parties. Likewise, the agreement to save harmless the contractor and the owner or his agents, servants and employees, from and against any and all loss, expense, damage or injury caused or occasioned, directly or indirectly, by his act or negligence or that act or negligence of any subcontractor or his agents or employees in performing any of the work called for in this contract, clearly shows that paragraph 4 of the general conditions of the contract only refers to the negligence of plaintiff or its employees or subcontractors. The plaintiff would have been liable as a matter of law to the general contractor, Buensod-Stacey Air Conditioning, Inc., for any damage to person or property caused by the act of its employees or subcontractors, whether it had incorporated paragraph 4 in the contract or not. It becomes immaterial, therefore, whether the counterclaim in the action between plaintiff and Buensod-Stacey Air Conditioning, Inc., was based upon contract or negligence.

Nor would there appear to be any merit to defendant's contention that this was not an accident. Defendant argues that, inasmuch as the evidence shows that not only Morris, the president of the plaintiff company, but another man named Hoffman, repeatedly cautioned the plaintiff's employees not to walk on the ceiling but to walk on the planks provided for that purpose, that the failure of the employees to do so showed a deliberate intent on their part to violate the instructions. I do not read the testimony this way. I see nothing to justify the belief that these workmen desired to commit sabotage upon the property of the Tivoli Theatre — rather the walking upon the ceiling by the employees of the plaintiff seems to have been accidental on the part of these men; they temporarily forgot their instructions, and in the process of the work, from time to time stepped upon the ceiling without intending to do so. This would not make one accident, but a series of accidents which occurred within the course of the work, and, taken in connection with the falling of the ceiling, which was occasioned by this carelessness on the part of the employees of the plaintiff's, the defendant's claim seems rather far-fetched.

Neither do I agree with the defendant's conclusion that the property of the Tivoli Theatre was in the care, custody and control of the plaintiff during this work. The plaintiff and its employees were only in the theatre because they had a contract to work there. They had no care and custody of the theatre property as

such, nor did they have any control over it in the sense that a person who has personal property in his possession, such as an automobile, may be said to have control of it. Possession or control of real property is indicated by an occupation exclusive of the control of any one else. The plaintiff and its employees were simply in this property temporarily for the purpose of doing the work. The control of the property still remained in the owners or lessees thereof. Moving picture performances were being daily given in the theatre under the management of the owners or lessees, as the case may be.

The plaintiff will, therefore, have judgment against the defendant for the sum of $628.11.