**L. L. JARRELL CONSTRUCTION COM-PANY, Inc., a Corporation under the Laws of the State of Alabama, Plaintiff,**

v.

**COLUMBIA CASUALTY COMPANY, a Capital Stock Insurance Company, Defendant.**

Civ. A. No. 1222.

United States District Court
S. D. Alabama, S. D.

April 13, 1955.

Jere Austill, Jr., Mobile, Ala., for plaintiff.

John W. McConnell, Jr. (of Inge, Twitty, Armbrecht & Jackson), Mobile, Ala., for defendant.

THOMAS, District Judge.

This action arises under a so-called "Contractors' Liability" insurance policy, issued by the defendant to the plaintiff corporation. The plaintiff seeks to recover the damages resulting to it when a concrete retaining wall was ruptured by the operation of a bulldozer.

The salient facts leading up to the rupture of the wall are as follows: The plaintiff contracted with the Water Works Board of the City of Mobile to construct the Big Creek Water Supply Project. With consent, as provided in the contract, plaintiff sublet to Ewin Engineering Corporation certain concrete work, including the west retaining wall of the spillway. This wall was constructed by Ewin, and inspected and approved by the Board's engineer. Pursuant to the contract, the construction of the wall was included in an approved estimate, of which 90% was paid to the plaintiff; and plaintiff in turn paid 90% to Ewin Engineering Corporation. Thereafter, the wall was ruptured by undue force exerted with a bulldozer which was being operated by plaintiff's employee in the backfilling of the retaining wall. All the movement of earth and backfilling was being done by plaintiff.

At the time of this occurrence, Ewin Engineering Corporation was still engaged in the construction of the spilling basin at a considerable distance from the wall, which work was included in its sub-contract with the plaintiff. In the sub-contract, Ewin Engineering Corporation assumed, for the portion of the work covered by the sub-contract, all obligations placed upon the plaintiff by the general contract.

Applicable portions of the specifications for Big Creek Water Supply Project introduced in evidence provide as follows:

"7.12. Contractor's Responsibility for Work:

"Until the final acceptance of the Work by the Engineer as evidenced in writing, it shall be in the custody and under the charge and care of the Contractor and he shall take every necessary precaution against injury or damage to any part thereof by the action of the elements or from any other cause, whether arising from the execution or from the non-execution of the work, unless otherwise provided for elsewhere in the Specifications or Contract. The Contractor shall rebuild, repair, restore and make good at his own expense all injuries or damages to any portion of the work occasioned by any of the above causes before its completion and acceptance and shall bear the expenses thereof.

\* \* \* \* \*

"8.10. Payments to Contractor:

"Not later than the 15th day of each calendar month the Owner will make a partial payment to the Contractor on the basis of a duly certified and approved estimate of the work performed during the preceding calendar month under this contract, but to insure the proper performance of this contract, the Owner will retain ten (10%) per cent of the amount of each estimate until final completion and acceptance of all work covered by this contract.

"All material and work covered by partial payments made shall thereupon become the property of the Owner, but this provision shall not be construed as relieving the Contractor from the sole responsibility for the care and protection of materials and work upon which payments have been made or the restoration of any damaged work, or as a waiver of the right of the Owner to require the fulfillment of all of the terms of the contract."

It was stipulated between the parties that the complaint was filed under Coverage B[1]—Division 1.[2] of the policy in question; that the policy was in full force and effect during the time in question; that the damage resulting to the plaintiff due to the ruptured wall was in excess of the face amount of the policy, and that $500 would have been reasonable attorneys' fees in the defense of a plea of recoupment arising out of the fracture of the wall, against which the defendant herein had refused to defend in a prior suit in the circuit court of Mobile County, Alabama.

The questions here involved are: (1) Whether Exclusion (g) of the policy relieves the defendant from liability; and (2) whether the liability imposed upon the plaintiff in the plea of recoupment due to the ruptured wall was liability imposed by contract or liability imposed by law. (See Exclusion (e), footnote 6 below; also footnote 1.)

The exclusion under (g) reads as follows: "This policy does not apply:

1. "Insuring Agreements—Coverage B— Property Damage Liability.

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof,

caused by accident and arising out of the hazards hereinafter defined."

2. "Definition of Hazards—Division 1. Premises—Operations. The ownership, maintenance or use of the premises, and all operations during the policy period which are necessary or incidental thereto."

438

* * * (g) under Coverage B,[3] to injury to or destruction of property owned, rented, occupied or used by the insured, and with respect to divisions 1,[4] 3, 4 and 5, of property *in the care, custody or control of the insured.*" (Emphasis supplied.)

Pursuant to paragraph 7.12 of the specifications, above set out, the entire project, as between the plaintiff and the Board, was "in the custody and under the charge and care of the Contractor," (plaintiff here). Although I do not think the plaintiff's contractual relation to the property is determinative of his factual relation, it is a proper element to be considered in determining the factual question of whether or not the wall was in the plaintiff's "care, custody or control." At the time of the accident resulting in the damage to the wall, the wall had been completed by Ewin Engineering Corporation, and the only work in the immediate area was the backfilling operation being carried on by the plaintiff. The wall had been inspected and approved by the Board's engineer, and, excepting the retained 10%, had been paid for. At all times pertinent, the plaintiff had a watchman on the job-site, though he was not in the immediate vicinity of the wall.

 Based upon the facts as they existed, I am constrained, though reluctantly,[5] to determine that the retaining wall in question was in the care, custody or control of the plaintiff, and therefore excluded from coverage under the policy by Exclusion (g).

The finding that the damaged retaining wall is excluded from coverage under the policy apparently renders unnecessary a decision on the question of whether the liability imposed upon the plaintiff for the damage to the wall was imposed by law or contract, so as to determine the applicability of Exclusion (e).[6] For clarity of the record, however, it appears wise to have the latter question here determined.

 The prior case (in the state court) did not go to trial; instead, judgment was entered by virtue of a settlement. At that point the pleadings were based upon the contractual liability of the plaintiff herein; but counsel for the Board testified that a plea of negligence would have been filed, in the event the case had gone to trial. The evidence adduced upon the trial in this court clearly established that the damage to the wall was due to the negligent operation of the bulldozer by the plaintiff's employee in the backfilling operation. As the plaintiff would have been liable for negligence in the absence of contractual liability, I find that Exclusion (e) would not relieve the defendant from liability under the policy. A. T. Morris & Co. v. Lumber Mutual Casualty Ins. Co. of New York, 163 Misc. 715, 298 N.Y.S. 227.

Judgment will be entered in accordance herewith.

3. See footnote 1.

4. See footnote 2.

5. I am disturbed with the thought of what coverage (if any) the policy in question afforded plaintiff. The Operations Extension Schedule attached to and forming part of the policy, contains the following typewritten paragraph:
"Grading of Land—N.O.C.—including borrowing, filling or back-filling—no canal or cellar excavation, railroad or street or road construction, or tunneling. (This classification is subject to Exclusion (i)."
Exclusion (i) reads as follows:
"(i) under Coverage B, with respect to division 1 of the Definition of Hazards, to injury to or destruction of property arising out of operations stated in the declarations as subject to this exclusion or out of any operations not described therein and caused by (1) blasting or explosion, other than the explosion of air or steam vessels or piping under pressure, prime movers, machinery or power transmitting equipment, or (2) the collapse of or structural injury to any building or structure due (a) to excavation, pile driving or caisson work or (b) moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof."

6. "(e) under divisions 1, 2 and 3 of the Definition of Hazards, to liability assumed by the insured under any contract or agreement, or under division 4 to liability of others assumed by the insured under any contract or agreement."