INTERNATIONAL DERRICK AND EQUIPMENT COMPANY, Plaintiff,

v.

Henry R. BUXBAUM, individually and doing business as Tower Erection Company, Defendant, and Coal Operators Casualty Company, Garnishee.

Civ. A. No. 10933.

United States District Court E. D. Pennsylvania.

March 7, 1956.

McLouth Steel Corp. v. Mesta Machine Co., 3 Cir., 214 F.2d 608.

Rawle & Henderson, Philadelphia, Pa., for plaintiff.

Alexander F. Barbieri, Philadelphia, Pa., for defendant.

George P. Williams, III, Philadelphia, Pa., for garnishee.

FOLLMER, District Judge.

On suit of plaintiff, a manufacturer of broadcasting towers, to recover from defendant, plaintiff's subcontractor, the value of a radio antenna mast which was destroyed on April 15, 1948, while being erected by defendant on premises of Mercer Broadcasting Company at Trenton, New Jersey, judgment was entered for plaintiff. Thereafter plaintiff issued an attachment execution naming Coal Op-

erators Casualty Company, defendant's insurance carrier, as garnishee. The matter is presently before the Court on plaintiff's motion for judgment against the garnishee filed after plaintiff's interrogatories and answers thereto by the garnishee.

The findings of fact in the opinion of the Court filed March 19, 1953, 110 F. Supp. 951, 953, as amended Jan. 31, 1956, 139 F.Supp. 799, detail the events out of which the accident occurred as follows:

"8. The defendant's employees under the personal supervision of Mr. Buxbaum and the manager and chief engineer of the broadcasting company attached the lifting cable to the antenna mast a few feet above its midpoint, so that it could be raised in a position of approximately a 45-degree angle with the ground.

"9. When the cable had been attached to the mast to the satisfaction of defendant from the standpoint of the lifting, and to the satisfaction of the broadcasting company's engineer from the standpoint of the protection of the antenna elements from possible damage from the cable, defendant directed that a short lift or 'strain' be taken on the winch. This raised the upper end of the mast several feet off the supports where it had been resting. At this time, the gin pole bent over as much as 5 feet.

"10. Defendant directed his employees to lift the lower end of the mast so that it could be moved to another position with reference to the foot of the tower, and then directed the winchman to take another strain on the lifting cable.

"11. While the winch was making the second lift, and the upper end of the antenna mast was 15 to 20 feet off the ground, the gin pole bent over and kept on bending, causing the mast to fall to the ground, with a part of the mast resting on the bed of the winch truck.

"18. Although at the time of the accident defendant did not have a proprietary type of control of the antenna, it did have a control in the nature of a possessory handling of the antenna for the purpose of its erection in accordance with the terms of the contract.

"19. Defendant had exclusive control as to the choice of equipment and its use, the timing, and the various details incident to the actual erection of the antenna mast. The broadcasting company's engineer and general manager were present to control possible damage to the equipment during the lifting operation but neither took any part in the actual supervision."

The policy of insurance issued to defendant bound the insurer "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined." Hazards were defined as follows:

"Division 1. Premises—Operations. The ownership, maintenance or use of the premises, and all operations during the policy period which are necessary or incidental thereto.
\* \* \* \* \* \*

"Division 5. Contractual. The express undertakings of the named insured designated in the declaration."

The policy listed several exclusions including the following:

"(g) under Coverage B, to injury to or destruction of property owned, rented, occupied or used by the insured, and with respect to divisions 1, 3, 4 and 5, of property in the care, custody or control of the insured;
\* \* \*."

The question before us here is a narrow one, namely, whether under the findings entered herein the antenna mast damaged by defendant's negligence was in the "care, custody or control" of defendant at the time the damage occurred.

The interpretation of the contract of insurance herein involved is controlled by the laws of the Commonwealth of Pennsylvania. No case squarely in point on the facts of this case has been brought to our attention nor has our independent search revealed such. How then would the Pennsylvania courts interpret the "care, custody or control" exclusion as applied to the circumstances of this case? A fair indication of such interpretation may be found in Speier v. Ayling, 1946, 158 Pa.Super. 404, 45 A.2d 385, in which in effect the court held that where an owner of an automobile permits another to drive the car and does not share in its control, although he is seated alongside of the driver, the latter is "in charge of" the car within the meaning of a policy of automobile liability insurance which excludes liability for damage to property "in charge of the insured." It may be assumed that under such circumstances had the owner of the car felt that some situation presented itself which called for action on his part he would and could have acted, until then the driver was "in charge" of the car. That, it seems to me, is the precise situation here. Defendant Buxbaum, we have already found, had "exclusive control as to the choice of equipment and its use, the timing, and the various details incident to the actual erection of the antenna mast. The broadcasting company's engineer and general manager were present to control possible damage to the equipment during the lifting operation but neither took any part in the actual supervision." There can be no question that Buxbaum was "in control" of the mast.

In Hardware Mut. Cas. Co. v. Mason-Moore-Tracy, Inc., 2 Cir., 1952, 194 F. 2d 173, 175, in affirming a judgment in favor of the insurance company, the court held:

"As to the first item of damage, the defendant contends that since it did not have 'control' of the building

in which the elevator was located, the exclusion clause does not apply. A. T. Morris & Co. v. Lumber Mutual Casualty Co., 163 Misc. 715, 298 N.Y.S. 227. But the exclusion clause requires only that the insured be in 'control' of the property actually injured, i. e., the elevator."

That, it would seem to me, is the general trend of the decisional law on the question.

McLouth Steel Corp. v. Mesta Machine Co., 3 Cir., 1954, 214 F.2d 608, 609, involved an Illinois contract of insurance which excluded " '* * * property owned, occupied or used by * * * (or) in the care, custody or control of the Insured.' " The majority of the court felt bound by Welborn v. Illinois Nat. Cas. Co., 1952, 347 Ill.App. 65, 106 N.E.2d 142, 143, as expository of the then present law in Illinois. The court stated:

"That case involved an insurance policy issued to a garage owner covering bodily injury or property damage suffered through operation of the garage. The policy excluded property, 'owned by, rented to, in charge of, or transported by the insured.' The Appellate Court of Illinois for the Fourth District affirmed a recovery on the policy for a loss suffered through destruction of an automobile left with the insured for repair. The question was whether the insured was 'in charge of' the car. The court conceded that the insured was in a sense in charge of the property, but held that he was not 'in charge' of it within the meaning of the exclusionary provision of the policy. It reasoned that the exclusionary provisions were limited to a proprietary type of control, though temporary, and did not cover the possessory handling which is incidental to repair. Almost anticipating the circumstances of the present case the court stated that its reasoning was 'not limited to a car', but was 'equally applicable to a machine or other piece of equipment'. We think the Illinois court would have reasoned the same way and would have reached the same conclusion had the present contract and circumstances been before it."

Judge McLaughlin in a strong dissenting opinion clearly states the proposition as follows:

"It was a forty-five ton grinder which was being moved not by its owner but by Foster, the expert called in for the purpose. The district judge concedes that Foster had physical possession of the grinder at the time of the accident. He had been hired to install it for the reason that he was skilled in that kind of task. But because he did not own the grinder the district court, upheld by the majority opinion, says that he did not control it. That is contrary to the fact, contrary to the ordinary definition of control quoted by appellee and contrary to settled decisional law. The Hardware Mutual case [1] above mentioned on its facts is very similar to the present issue; it should be persuasive."

In conclusion, applied to the facts of this case, there would seem to be no question that the Pennsylvania courts would find the defendant, Buxbaum, to have been in the care, custody and control of the antenna mast in question and, therefore, within the exclusion clause of the policy.

Plaintiff's motion for judgment against garnishee will be denied.

---

1. Hardware Mut. Cas. Co. v. Mason-Moore-Tracy, Inc., supra.