297 So.2d 470 (1974)
HENDRIX ELECTRIC COMPANY, INC., Plaintiff-Appellee,
v.
CASUALTY RECIPROCAL EXCHANGE, Defendant-Appellant, and
The Tucker Insurance Agency, Inc., Defendant-Appellee.
No. 12356.
Court of Appeal of Louisiana, Second Circuit.
July 1, 1974.
*471 Bodenheimer, Jones, Klotz & Simmons by Harry D. Simmons, Shreveport, for defendant-appellant.
Donald R. Miller, Shreveport, for plaintiff-appellee Hendrix Electric Co., Inc.
Mayer & Smith by Caldwell Roberts, Shreveport, for defendant-appellee The Tucker Ins. Agency, Inc.
Before PRICE, HALL and WILLIAMS, JJ.
HALL, Judge.
The issue involved in this case is the applicability of an exclusionary clause contained in a comprehensive general liability policy issued by the defendant insurance company to the plaintiff electrical contractor. *472 Defendant appeals from a judgment of the district court holding that the exclusionary clauses did not apply, that there was coverage under the policy, and awarding plaintiff his cost of repairing damage to property of another caused by the negligence of plaintiff's employee.
Plaintiff entered into a construction contract with the United States of America, whereby plaintiff was to install exterior garage lighting and convenience outlets for garage units at Barksdale Air Force Base in accordance with plans and specifications prepared by the Government. Principal features of the work are described in the contract as: (a) install underground direct burial cable from existing distribution power panel as shown on contract drawings; and (b) install panel, convenience outlets, and mercury vapor light unit with photo-electric cell control as shown on contract drawings.
The incident giving rise to this lawsuit occurred while plaintiff was working in Block 31, which contained ten dwelling houses and two multi-stall garages. Located in an open area in the center of the block was an existing electric distribution power panel through which electricity was distributed to the ten houses and to two pumps. The panel itself is a sheet of metal about four feet long and one foot wide to which was attached twelve circuit breakers, one for each house and each pump. The panel with attached circuit breakers was housed in a metal box approximately four and one-half feet in height by two feet in width and six inches in depth, located about two feet off the ground, permanently installed on brackets or legs which supported it. The metal box had a door with a lock and plaintiff had been furnished with a key in order to have access to the panel within the box.
On the date of the accident, plaintiff had installed the prescribed lighting on one of the garages and had run new wiring in an underground conduit to a point close to the distribution panel. The next step in the construction process was to install a new circuit breaker in the distribution panel and then bring the new wiring into the panel and attach it to the circuit breaker. The panel remained energized or "hot" during this procedure.
The president of the plaintiff company unlocked the door to the panel box, observed that there was room at the bottom of the panel for the new circuit breaker, and then instructed one of his employees to prepare the panel for installation of the circuit breaker. The employee began to remove some insulation from the bus bar on the panel to which the circuit breaker would be attached at which time a piece of the insulationa metal stripfell down causing a short and producing a flame which shot up through the top of the panel, burning and destroying the panel and all of the circuit breakers attached to it.
Plaintiff repaired and replaced the panel and the circuit breakers at a cost to him of $1,584.56.
At the time of the accident there was in full force and effect a policy of comprehensive general liability insurance issued by defendant to plaintiff. The policy provided property damage liability coverage under which the company obligated itself to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of property damage to which this insurance applies caused by an occurrence. There is no question but that the policy provides coverage in this instance, unless, as contended by defendant, the loss comes within one of the several exclusions specifically set forth in the policy. The exclusions relied on by defendant provide as follows:
"This insurance does not apply:
* * * * * *
"(i) to property damage to
* * * * * *
"(3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control;...

*473 * * * * * *
"(m) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; * * *."
Exclusion (m) clearly does not apply. The damage was not to any "work performed by or on behalf of the named insured". The damage was to existing property of the Government, that is, the panel and attached circuit breakers.
A close and difficult issue for decision exists in regard to the applicability of exclusion (i). Defendant vigorously contends that the distribution panel including the attached circuit breakers was property in the care, custody or control of the insured and as to which the insured was exercising physical control.
The leading case in Louisiana interpreting the care, custody or control exclusion in a property damage liability policy is Thomas W. Hooley & Sons v. Zurich Gen. Acc. & L. Ins. Co., 235 La. 289, 103 So.2d 449 (1958). In that case plaintiff was fulfilling its contract with the City of New Orleans to dismantle a statue of Robert E. Lee and the supporting stone column located in Lee Circle, when a portion of the column fell from a crane and damaged a large ornamental cast iron urn situated at the base of the monument as well as some granite slabs at the base of the monument. The court allowed recovery to the plaintiff against the defendant liability insurer for damage to the urn, holding that the exclusion was not applicable since the damaged property was not within the care, custody or control of the plaintiff whose contract concerned the statue and supporting column and did not include the base of the monument or the ornamental urns at the corners of the base. The jurisprudence interpreting and applying the exclusion clause was summarized by the court as follows:
"The uniform jurisprudence holds that damaged property or premises merely incidental or adjacent to the contracted object upon which work is being performed by the insured is not within the `care, custody or control' of the insured for purposes of the exclusion clause in question, even though he might be permitted access thereto during the performance of his contract. Boswell v. Travelers Indem. Co., 1956, 38 N.J.Super. 599, 120 A.2d 250, Maryland Cas. Co. v. Hopper, Tex.Cir.App.1950, 237 S. W.2d 411, Rex Roofing Co. v. Lumber Mut. Cas. Ins. Co., 1950, 280 App.Div. 665, 116 N.Y.S.2d 876, A. T. Morris & Co. v. Lumber Mut. Cas. Ins. Co., 1937, 163 Misc. 715, 298 N.Y.S. 227, Cohen v. Keystone Mut. Cas. Co., 1943, 151 Pa.Super. 211, 30 A.2d 203.
"The cases cited by defendant recognize this principle; although, on the basis of facts distinguishable from the present, recovery was denied to the insureds therein on the basis of the aforesaid exclusion clause. These cases found the damaged property therein to be within the `care, custody or control' of the insured as the actual subject of the insured's repair, installation, construction, or transportation contract, or as equipment actually used by the insured in the performance thereof. International Derrick & Equipment Co. v. Buxbaum, 3 Cir., 1957, 240 F.2d 536, Hardware Mut. Cas. Co. v. Mason-Moore-Tracy, Inc., 2 Cir., 1952, 194 F.2d 173, L. L. Jarrell Construction Co. v. Columbia Cas. Co., D.C.1955, 130 F.Supp. 436; Root Motor Co. v. Massachusetts Bonding & Ins. Co., 1932, 187 Minn. 559, 246 N.W. 118; Maryland Cas. Co. v. Holmsgaard, 1956, 10 Ill.App.2d 1, 133 N.E.2d 910, and John G. Speirs & Co. v. Underwriters at Lloyd's London, 1948, 84 Cal.App.2d 603, 191 P.2d 124."
Numerous cases dealing with this exclusion clause are collected in an annotation at 62 A.L.R.2d 1242, as supplemented by the Later Case Service. The annotation is *474 often cited as authority for the general rule that where the property damaged is merely incidental to the property upon which work is being performed by the insured, the exclusion is not applicable; but where the property damaged is under the supervision of the insured and is a necessary element of the work involved, the property is in the care, custody or control of the insured.
While the foregoing rules are logical and clearly expressed, they are often difficult to apply to particular factual situations. As stated by the court in Elcar Mobile Homes, Inc. v. D. K. Baxter, Inc., 66 N.J.Super. 478, 169 A.2d 509 (1961):
"The distinction is easy to make verbally, but we conceive that, when it was applied to a given state of facts, the facts have governed, and not the verbalization. The alleged distinction rarely dictated the result; rather it justified it."
Some of the criteria mentioned in Elcar for determining what constitutes care, custody or control or exercising physical control are whether the property is realty or personalty, the location, size, shape and other characteristics of the property, what the insured is doing to it and how, and the interest in and relation of the insured and others to it.
Pertinent to the resolution of the issue are the general well established principles that the primary object of all insurance is to insure, and exclusion clauses are strictly construed against the insurer, expecially if they are of uncertain import.
In Elcar, supra, and in Royal Indemnity Company v. Smith, 121 Ga.App. 272, 173 S.E.2d 738 (1970), another leading case on the subject, the courts examined the purposes of the exclusion in the policy in an effort to determine the types of risk which the policy intended to insure and intended to exclude. It is noted that there is a greater moral hazard as far as the insurance company is concerned in insuring property under the care, custody or control of the insured in the sense of being owned, rented or used by the insured and where there might be some advantage to the insured in falsifying or exaggerating a loss. This reason for the exclusion does not apply with reference to property belonging solely and unconditionally to others as in the instant case. The clause clearly applies to bailments where the hazards are greatly increased, the one area where all courts seem to agree the exclusion applies.
The remaining principal reason for the exclusion is to avoid a guarantee of workmanship and it is in giving effect to this purpose as applied to a given factual situation that difficulty often arises.
Royalty Indemnity Company v. Smith, supra, involved analogous facts. There plaintiff contracted to sandblast and paint the walls of a steel tank. In the process of its work plaintiff's crew damaged a radial sweeper arm within the tank. The court held that only the walls of the tank which the contractor was hired to paint and not the interior mechanism was in the care, custody or control of the plaintiff. The court recognized that breaking up structures into component parts to apply this exclusion is in some measure illogical but commented it was forced to do so by the wording of the exclusion itself.
Another case involving analogous facts is Leiter Electric Co. v. Bituminous Casualty Corp., 99 Ill.App.2d 386, 241 N.E.2d 325 (1968). Plaintiff contracted to install certain machinery in a plant and as a part of such installation was required to ground the electrical system by attaching copper wire to a water pipe system being constructed around the perimeter of the building below the surface of the ground. The copper wire was attached to the pipe by use of an acetylene torch. After the connections were made it was discovered that the pipe cracked at the point of each such connection. In holding that the exclusion did not apply, the court found that plaintiff had only temporary access to and limited possession of a part of the water main *475 and not care, custody or control of such main within the meaning of the exclusion clause.
Applying the foregoing principles to the facts of this case, we find that plaintiff had temporary access and limited possession of the distribution box, a permanent fixture owned by the Government. The panel itself within the box was the subject of the contract and the object on which plaintiff's employee was actually working at the time of the accident. Plaintiff was charged by the contract and as an essential element of the work to work directly on and with the panel, but not the existing circuit breakers attached to it with which plaintiff had no connection whatsoever. The panel itself was the subject or object of plaintiff's workmanship, but not the circuit breakers attached to it.
We conclude, therefore, that the panel itself was within the care, custody and control or was in the physical control of plaintiff and damage to the panel is consequently excluded from the coverage of the policy. We further conclude, however, that the circuit breakers attached to the panel were not within the care, custody and control of the plaintiff but were merely incidental or adjacent to the contracted object upon which work was being performed and consequently were not excluded from coverage. Plaintiff is entitled to recover his costs of repairing and replacing the circuit breakers. By eliminating the cost of the new panel and making a proportionate reduction in the total labor charge, we arrive at the sum of $1,110.31 which plaintiff is entitled to recover.
Defendant cites and relies upon Industrial Supply Co. of La. v. Transamerica Ins. Co., 220 So.2d 126 (La.App. 3d Cir. 1969) and Towboats, Inc. v. General Equipment and Iron Wks, Inc., 280 So.2d 840 (La. App. 4th Cir. 1973). In the Industrial Supply case, plaintiff was making certain additions and alterations to a customer's tank truck at plaintiff's place of business. Plaintiff's employee lit a welding torch near an open vent to an oil tank on the truck causing an explosion which damaged the truck. The court held that the exclusion clause applied in that plaintiff was actually exercising physical control of the truck for the purpose of completing the installations at the time of the explosion. That case is distinguishable from the instant case in that it involved a bailment situation of an item of movable property which was completely within the possession and control of the plaintiff.
In Towboats, the contractor contracted to supply a crane to hoist an engine from the wharf onto a tugboat. In the process the boom gave way and the engine was dropped and damaged. The court applied the exclusion holding that the engine was in the care, custody or control of the contractor. Again, the case is distinguishable in that it involved an item of movable property which had been taken into the complete physical control of the insured.
Both Industrial Supply and Towboats are also distinguishable in that the items damaged were the subject of the contract the truck in one case and the engine in the other case.
For the reasons assigned, the judgment of the district court is amended by reducing the amount of the judgment from $1,584.56 to $1,110.31, and as amended, is affirmed at appellant's costs.
Amended, and as amended, affirmed.