# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 14-31283

————

United States Court of Appeals
Fifth Circuit

**FILED**

August 27, 2015

Lyle W. Cayce
Clerk

XL SPECIALTY INSURANCE COMPANY,

> Plaintiff - Appellee Cross- Appellant

v.

BOLLINGER SHIPYARDS, INCORPORATED; BOLLINGER SHIPYARDS LOCKPORT, L.L.C.; HALTER BOLLINGER JOINT VENTURE, L.L.C.,

> Defendants - Appellants Cross- Appellees

———————————————————————

BOLLINGER SHIPYARDS, INCORPORATED; BOLLINGER SHIPYARDS LOCKPORT, L.L.C.; HALTER BOLLINGER JOINT VENTURE, L.L.C.,

> Plaintiffs - Appellants Cross- Appellees

v.

XL SPECIALTY INSURANCE COMPANY,

> Defendant - Appellee Cross- Appellant

CONTINENTAL INSURANCE COMPANY,

> Defendant - Appellee

————————

Appeals from the United States District Court
for the Eastern District of Louisiana

————————

No. 14-31283

Before STEWART, Chief Judge, and JONES and GRAVES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Bollinger Shipyards won a multimillion dollar contract to upgrade eight United States Coast Guard 110-foot cutters to 123-foot craft. The vessels failed and the United States sued Bollinger. The defendant insurers refused to undertake Bollinger's defense. In Bollinger's suit to enforce the insurance contract, the district court in a comprehensive opinion, granted summary judgment for the insurers. We need not reach numerous issues raised concerning the insurance contracts' interpretation because we may affirm on a narrow basis.

## BACKGROUND[1]

As part of the Coast Guard's "Deepwater" modernization program, Bollinger Shipyards converted eight 110-foot patrol boats (vessels it had built originally) to 123-foot patrol boats. The underlying lawsuit alleges that throughout the bidding and development stages of the project, the Coast Guard was concerned about the ability of the boats' hulls to accommodate the extensions. In response, Bollinger submitted a longitudinal strength analysis that compared the "required section modulus" for the redesign to the upgraded vessels' "actual" section modulus. This report showed that the redesigned boats would have well over twice the required strength. Bollinger later revised its reported figure down to a number still well above the "required" figure. This revised calculation allegedly produced three different results, two of which indicated the hull strength was *not* sufficient for the conversion. Bollinger allegedly did not disclose the problematic results but completed the work anyway and delivered the vessels.

---

[1] Nothing in this opinion should be taken as resolving any claim in the underlying lawsuit.

No. 14-31283

On September 10, 2004, one of the vessels Bollinger refitted "suffered a structural casualty that included buckling of the hull." The Coast Guard determined that all eight vessels were similarly and irreparably deficient; all of them are now "unusable" despite efforts to remedy the hull strength. The Department of Justice sent Bollinger a litigation hold letter in December 2006 and the Coast Guard revoked acceptance of the vessels on May 17, 2007. Bollinger cooperated with the Government investigation and entered into 21 successive agreements tolling the statute of limitations.

During the 21st tolling agreement, in July 2011, the United States sued Bollinger, alleging five causes of action: two under the False Claims Act and one each of common law fraud, negligent misrepresentation, and unjust enrichment. The district court dismissed the case for failure to state a claim, *United States v. Bollinger Shipyards, Inc.*, 979 F. Supp. 2d 721 (E.D. La. 2013), and this court reversed, 775 F.3d 255 (5th Cir. 2014). However, the Government had only appealed the dismissal of the FCA claims, and those are the only claims remaining in the underlying lawsuit. *See* Brief of United States at 13 n.5, *Bollinger Shipyards*, 775 F.3d 255 ("The United States also alleged liability under common law theories, but has not pursued those theories on appeal."). Trial is currently scheduled for April 11, 2016. Scheduling Order, *Bollinger Shipyards*, 979 F. Supp. 2d 721, No. 12-920-SSV-MBN (E.D. La. Apr. 14, 2015), ECF No. 193.

Just days before the Government filed suit, Bollinger advised its general maritime liability insurer XL Specialty[2] and excess insurer Continental of the impending civil claims. XL responded with a "reservation of rights" letter indicating that it was unsure whether the policy covered the Government's claims; meanwhile, Bollinger obviously continued to pay for its own defense.

---

[2] Technically, some of XL's policies supplied excess as well as primary coverage.

3

No. 14-31283

Before XL formally acted on Bollinger's claim, Bollinger sued XL and Continental in Louisiana state court to enforce its insurance policies, alleging common law breaches of contract and bad faith under Louisiana Revised Statutes §§ 22:1892 and 22:1973. Continental counterclaimed for a declaration that it owed Bollinger no duty to defend and no liability for bad faith. XL separately sued Bollinger in federal court for a declaratory judgment on coverage and removed the state case; the two were consolidated in the Eastern District of Louisiana. A few months later, Continental moved for and was granted summary judgment on the bad faith claims.

Bollinger and XL then filed competing summary judgment motions. The district court granted summary judgment for XL, holding "that the XL policy does not cover the United States' lawsuit and hence does not impose upon XL a duty to defend Bollinger[.]" *XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*, 57 F. Supp. 3d 728, 752 (E.D. La. 2014). The court granted summary judgment to Continental at the same time. Bollinger appealed and XL cross-appealed. We essentially agree with the district court on the points discussed below, and therefore affirm.

## DISCUSSION

This court reviews appeals of summary judgment *de novo*, applying the same standard as the district court. *Roberts v. City of Shreveport*, 397 F.3d 287, 291 (5th Cir. 2005). Louisiana law applies in this diversity action. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007). "An insurance policy is a conventional obligation that constitutes the law between the insured and insurer, and the agreement governs the nature of their relationship." *Peterson v. Schimek*, 729 So. 2d 1024, 1028 (La. 1999). "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent." *Id.* at 1028.

4

No. 14-31283

"Whether an insurer has a duty to defend is determined solely by 'compar[ing] the allegations in the complaint against the insured with the terms of the policy' at issue—the so-called 'eight corners' rule." *Lamar Adver. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 660 (5th Cir. 2005) (quoting *Selective Ins. Co. of Se. v. J.B. Mouton & Sons, Inc.*, 954 F.2d 1075, 1077 (5th Cir. 1992)). This rule requires the court to compare the complaint for which coverage is sought with the terms of the insurance policy: "If 'there are any facts in the complaint which, if taken as true, support a claim for which coverage is not unambiguously excluded,' the insurer must defend the insured." *Lamar*, 396 F.3d at 660 (5th Cir. 2005) (quoting *In re Complaint of Stone Petroleum Corp.*, 961 F.2d 90, 91 (5th Cir. 1992)). The court considers the facts alleged in the underlying complaint rather than conclusory labels applied to claims. *Quick v. Ronald Adams Contractor, Inc.*, 861 So.2d 278, 282 (La.Ct.App.2003).

We discuss each policy in light of these general principles and find no ambiguities.

## I.    XL Specialty

The underlying complaint contained five causes of action:  two FCA claims, common-law fraud, unjust enrichment, and negligent misrepresentation. Under the eight-corners rule XL is obliged to defend Bollinger unless all of the claims in the underlying suit are excluded from policy coverage.  The district court concluded that all five claims in the underlying complaint fit into either Exclusion 28 or Exclusion 32, but it rejected XL's argument that other exclusions applied.[3]  We agree that Exclusions 28 and 32 exempt all claims.

### A. Exclusion 28: Predetermined Level of Fitness

Exclusion 28 of Bollinger's insurance contract with XL provides that it

shall not apply to . . . [t]he failure of your products to meet any predetermined level of fitness or performance and/or guarantee of

---

[3] We do not reach other coverage issues raised in XL's brief and cross-appeal.

5

such fitness or level of performance and/or any consequential loss arising therefrom.

On appeal, Bollinger makes two arguments in support of its contention that this provision does not apply. First, Bollinger argues that Exclusion 28 does not preclude coverage for the claims in the underlying suit because the United States was seeking damages for the entire value of the vessels, not only the "work product" for which Bollinger was responsible. Second, Bollinger argues that the underlying suit did not allege a failure to meet a "predetermined level of fitness." We conclude, however, that Exclusion 28 applies to the government's unjust enrichment and negligent misrepresentation claims.

The precedent on which Bollinger relies for its first argument is inapposite. In *OSCA*, for example, the contractor "had only been hired to set a bridge plug inside of an already constructed well, and the allegedly faulty work damaged not only the plug but the entire well[.]" *Underwriters at Lloyd's London v. OSCA, Inc.*, No. 03-20398, 2006 WL 941794 (5th Cir. Apr. 12, 2006) (per curiam) (unpublished). The insurance policy at issue excluded coverage for claims

> arising out of the failure of any Insured's Products or of work . . . by or on behalf of any Insured to meet any warranty or representation by any Insured as to the level of performance, quality, fitness or durability or extent that such liability is for the diminished value or utility of Insured's Products or work by or on behalf of any Insured[.]

*Id.* at *20. Such "work product exclusions" typically restrict coverage on the basis of "the well-settled principle that liability policies are not intended to serve as performance bonds." *Rivnor Properties v. Herbert O'Donnell, Inc.*, 633 So. 2d 735, 751 (La. Ct. App. 1994); *see also Old River Terminal Co-op v. Davco Corp. of Tenn.*, 431 So. 2d 1068 (La. Ct. App. 1983). But work product exclusions do not apply in cases like *Hendrix Electric Co. v. Casualty Reciprocal Exchange*, 297 So. 2d 470 (La. Ct. App. 1974), in which

[t]he job involved running an underground electrical cable to an existing power distribution panel and installing a new circuit breaker in the panel. An employee accidentally dropped a metal strip and thereby caused a short which started a fire and destroyed the entire panel. The court held that the "damage was not to any 'work performed on or on behalf of the named insured.' The damage was to existing property of the Government, that is the panel and attached circuit breakers." Thus, the court found that the exclusion clearly did not apply.

*OSCA*, 2006 WL 941794, at \*21 (citations omitted) (citing *Hendrix Elec.*, 297 So. 2d at 472); *see also Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401 (5th Cir. 1982) (distinguishing cases in which "[w]hat was lost to use in those cases was the insured's own product").

Bollinger argues that this is a case like *OSCA* and *Hendrix* because the United States is not seeking damages for Bollinger's work or product alone, but for the entirety of the eight vessels that all unexpectedly failed. Because the damage for which the United States seeks to recover is "the result of something" other than its work product, "Exclusion 28 was not triggered."

This argument cannot succeed. As the district court noted, the policy exclusions in those cases did not exempt the insurer from coverage for "consequential damages" arising from the failure of the insured's work. *See, e.g.*, OSCA, 2006 WL 941794, at \*20. Exclusion 28, by its own terms, exempts claims for damage not only to the insured's work product but also to things other than the insured's product.

Bollinger's second argument, that the underlying suit did not allege a failure to meet a "predetermined level of fitness," relies in part on the district court's previous dismissal of the underlying suit because the complaint did not, in the court's words, "allege what the program and contract requirements were for the converted vessels." *See United States v. Bollinger Shipyards, Inc.*, No. CIV. A. 12-920, 2013 WL 393037, at \*1 (E.D. La. Jan. 30, 2013)). But just before that, the district court wrote, "The United States alleges that one of the

*requirements* was that Bollinger provide the Coast Guard with a Hull Load and Strength Analysis ('HLSA') in order to verify that the modified vessels met the program and contract *requirements*." *Id.* (emphases added).

Moreover, the district court was assessing whether the complaint met the FCA's materiality requirement as codified at 31 U.S.C. § 3729(a)(1)(B). In contrast, the issue in regard to this exclusion is not the FCA claims at all but the unjust enrichment and negligent misrepresentation claims. The United States pled that "Bollinger . . . was responsible for the . . . performance requirements" of the modified boats. Other "requirements" referenced in the complaint include "the *required* section modulus," a *requirement* to comply with American Bureau of Shipping standards, and a *requirement* to provide a hull strength analysis, which itself was used to determine conformity with "program and contract *requirements*." Even if the United States had not alleged sufficient facts to show materiality under the FCA—a determination this court reversed—that would not mean that the complaint did not allege liability because Bollinger's work failed to meet performance requirements.

Citing dictionaries, Bollinger also contends that its "representations" cannot amount to a "predetermination." The argument is that "representations" are unilateral and "predeterminations" imply bilateral agreement. But "predetermined" means only "established, decided upon, or decreed beforehand." *OED Online*, http://www.oed.com/view/Entry/149830. It implies nothing about how a determination comes about, or who has the authority to determine. A single party can "determine" something, and can do so in advance: there is nothing inherently bilateral about predetermination. And even if there were, the complaint lays out straightforwardly that Bollinger failed to meet a requirement that the parties together determined in advance. The Deepwater contract required the vendor to submit a hull strength analysis, which stated the required longitudinal strength that Bollinger's work

failed to meet. As the district court noted, "the complaint makes plain that Bollinger, the party responsible for 'performance requirements,' recognized and communicated from the earliest stages of the project that the 'ABS required section modulus' was 3113 cubic inches." *Bollinger Shipyards*, 57 F. Supp. 3d at 755 (footnotes omitted). Thus, however many parties were involved in the predetermination, this was a predetermined level of fitness.[4]

**B. Exclusion 32**

With the factual basis for the unjust enrichment and fraudulent misrepresentation claims excluded under Exclusion 28, only the FCA and common law fraud claims remain. These fall out under Exclusion 32, which absolves XL from covering:

> e.   Actual or alleged liability arising out of or incidental to any alleged violation(s) of any federal or state law regulating, controlling, and governing antitrust or the prohibition of monopolies, activities in restraint of trade, unfair methods of competition or deceptive acts and practices in trade and commerce, including, without limitation, the Sherman Act, the Clayton Act, the Robinson-Patman Act, the Federal Trade Commission Act and the Hart-Scott-Rodino Antitrust Improvements Act; or

> f.   Actual or alleged liability arising out of or contributed to by [Bollinger's] dishonesty or infidelity.

In the district court, Bollinger "rightfully concede[d] that these exclusions, by their plain terms, preclude coverage for the United States' common law fraud claims and its claims under the False Claims Act." *Bollinger Shipyards*,

---

[4] Bollinger also suggests that the district court's reading of the work-products exclusion is overly broad, as it poses a hypothetical scenario in which "a Bollinger employee [] negligently left tools in a place that caused an innocent third party to trip and injure himself[.]" On this reading, XL could "deny coverage, even though the injury had nothing whatsoever to do with the predetermined level of fitness of Bollinger's work or product[.]" This hypothetical is nonsense: in such a situation, the complaint would not allege that the injury stemmed from Bollinger's work failing to meet a predetermined requirement, which is the first precondition of Exclusion 28.

No. 14-31283

57 F. Supp. 3d at 757. Bollinger has changed its position following this court's reversal of the district court's FCA materiality decision, in which we focused on "reckless disregard" as the basis of an FCA claim. *See Bollinger Shipyards*, 775 F.3d at 260. Bollinger continues to concede, however, that Exclusion 32.f "may" exempt the underlying fraud claim. Of course it does.

We need not decide whether "reckless disregard for the truth" qualifies as "dishonesty or infidelity" under 32.f, since the FCA claims clearly fall under Exclusion 32.e. It is irrelevant that the FCA is not listed among the statutes excluded, since the FCA is a "federal law . . . regulating . . . deceptive acts and practices in trade and commerce[.]" Bollinger itself cites authority holding that the FCA is the legal tool by which the Government seeks recompense for "deceptive practices directed at the public purse." *Cook Cnty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 130-31, 123 S. Ct. 1239, 1247 (2003) (quoting *United States v. Halper*, 490 U.S. 435, 445, 109 S. Ct. 1892, 1900 (1989), *abrogated on other grounds by Hudson v. United States*, 522 U.S. 93, 118 S. Ct. 488 (1997)). Moreover, the alleged FCA violation need not itself be "deceptive." The plain language of Exclusion 32.e embraces laws that regulate deceptive acts, not allegations of deceptive acts.[5]

---

[5] Bollinger also argues that XL acted with bad faith in denying coverage, violating Louisiana Revised Statutes §§ 22:1892 & 22:1973. The fact that coverage was excluded pretermits this claim. *Cf. Cartwright v. Cuna Mut. Ins. Soc'y*, 476 So. 2d 915, 918 (La. App. 1985) ("an insurer's refusal to pay contested benefits is not without just and reasonable cause where that refusal is based on a reasonable interpretation of policy language which has not been construed to the contrary by the courts of this state").

No. 14-31283

## II.    Continental

Bollinger challenges the summary judgment awarded to Continental, its excess carrier, largely on the grounds of error in the district court's discussion of XL's policy coverage and prematurity.  Both contentions fail.

Continental's excess coverage obligation is not implicated until Bollinger exhausts its lower-level coverages totaling $26 million, which it "has not yet come close to" doing.  *Bollinger Shipyards*, 57 F. Supp. 3d at 764.  Further, there are no claims remaining that could bring Bollinger's covered liability above this mark because the common law claims are no longer in the case.  The remaining claims under the False Claims Act are not covered because Continental's policy insures Bollinger against liability for property damage and personal injury.  FCA claims do not seek recovery for property damage or bodily injury, as such, but for "false" claims for payment to the government.[6] *See Bollinger Shipyards*, 57 F. Supp. 3d at 764; accord, s*ee Health Care Indus. Liability Ins. Prog. v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689 (7th Cir. 2009)(denying coverage on similar facts).  As the district court held, "[b]ecause neither of the two claims remaining in the underlying suit are covered by Continental's policies, Continental is entitled to summary and declaratory judgment that it has no duty to defend or indemnify Bollinger in the under-lying suit." *Bollinger Shipyards*, 57 F.Supp.3d at 765.  Bollinger's prematurity argument is no more than a Hail Mary under the circumstances of this case.

---

[6] The district court's phrasing is felicitous: "though the underlying suit involves some *allegations* of physical damages, the United States' FCA claims cannot lead to *liability for damages* for physical damages." *Bollinger Shipyards*, 57 F. Supp. 3d at 765.

11

No. 14-31283

## CONCLUSION

The contract between the parties did not require XL to defend Bollinger from the claims the United States brought, and Continental's excess policy cannot give rise to coverage.  The judgment of the district court is **AFFIRMED.**